FILED by ___ D.C.
ELECTRONIC

**May 8, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

# 09-60683-CiV-ALTONAGA/BROWN

GUMA AGUIAR,

              Plaintiff,

        CASE NO._____ - CIV-_____/_____

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN, LLP, an Illinois limited
liability partnership,

              Defendants.

_____/

## NOTICE OF REMOVAL

    Defendant, Katten Muchin Rosenman, LLP ("Katten"), named defendant in the above-captioned matter, pursuant to 28 U.S.C. §§ 1441 and 1446, hereby files this Notice of Removal ("Notice") of this action from the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, respectfully showing as follows:

    1.    Plaintiff, Guma Aguiar ("Aguiar"), filed his state court action on March 26, 2009 in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida. The action is styled <u>Guma Aguiar v. William Natbony, Thomas Kaplan, and Katten Muchin Rosenman, LLP, an Illinois limited liability partnership</u>, Case No.: 0901778207.

    2.    On April 17, 2009, Katten was served with a Summons and a copy of the Complaint ("Complaint").

{WP585427;2}

3.     Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings publicly available from the circuit court in this matter are attached hereto as Composite Exhibit "A."

4.     Defendants Natbony and Kaplan consent to and join in the removal of this action. A copy of Defendants', William Natbony and Thomas Kaplan, Consent and Joinder to Removal is attached hereto as Exhibit "B."

5.     By filing this Notice, Katten does not waive any jurisdictional or other defenses that might be available to it.

### Amount in Controversy

6.     When a plaintiff does not specify the amount of damages sought, the party seeking removal need only demonstrate by a preponderance of the evidence that the damage award will more likely than not exceed $75,000.00. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). See also Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds by* Cohen v. Office Depot, 204 F.3d 1069 (11th Cir. 2000) (stating "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer.").

7.     If "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement," removal from state court to federal court is proper. Williams, 269 F.3d at 1319.

8.     In this case, it is facially apparent from the Complaint that the amount in controversy exceeds the jurisdictional requirement because the Plaintiff is seeking an award for compensatory and consequential damages as a result of actions allegedly taken by the Defendants which purportedly deprived Plaintiff of his claimed share of a sale of assets valued at

$2.55 billion in addition to damages claimed to be the result of the Defendants actions concerning a $17 million dollar payment which Plaintiff claims he was owed.

      9.      Specifically, Plaintiff has alleged the following:

      a)      Plaintiff and Defendant Kaplan agreed to be "partners" in a natural gas exploration company. See Complaint at ¶ 8 attached as Exhibit "1" to Composite Exhibit "A" attached hereto.

      b)      Defendant Natbony, a partner in Defendant Katten's New York Office told both Plaintiff and Defendant Kaplan that Defendant Natbony represented both "equally in establishing an ownership structure." Id. at ¶ 10.

      c)      Natbony allegedly documented the ownership of the "partnership" between Plaintiff and Kaplan and placed the venture into two family trusts. Id.

      d)      As a result, Plaintiff and Kaplan became "ultimate partners" in the venture. Id. at ¶ 11.

      e)      Thereafter, Plaintiff allegedly negotiated multi-million dollar transactions with various non-party entities that allegedly resulted in approximately $300 million in investments into the venture. These investments resulted in a payment of approximately $170 million to be paid to the trusts allegedly created by Natbony in which Plaintiff believed he had an interest. Id. at ¶ 18.

      f)      Defendants Natbony and Kaplan allegedly entered into an agreement to defraud Plaintiff by allegedly agreeing that while Plaintiff would receive a 10% percent interest in the gas venture, they would eventually take away

      3

Plaintiff's interest in the two family trusts. Id. at ¶ 24. Defendant Natbony allegedly continued to advise Plaintiff throughout 2006 and 2007 that he was receiving a 10 percent interest in the gas venture in addition to his interest in the two family trusts. Id. at ¶¶ 24–25.

g)     In order to encourage Plaintiff's reliance that he was going to receive a 10% interest in the gas venture in addition to his interest in the two family trusts, Plaintiff alleges that Kaplan and Natbony repeatedly advised him that his interest was worth "hundreds of millions of dollars" and failed to advise him the their purported plan to terminate his interest in the family trusts once Plaintiff was no longer needed. Id. at ¶¶ 25–26.

h)     Defendant Natbony allegedly knew that Plaintiff could and should have received a greater interest than 10 percent but was allegedly acting in the financial interests of Defendant Kaplan. Id. at ¶ 28. As an alleged result, Plaintiff allegedly received a smaller percentage of the gas venture than he would have absent his alleged reliance on Defendant Natbony's alleged statements and for advice. Id.

i)     Defendants Kaplan and Natbony allegedly agreed that Plaintiff was to be paid approximately $17 million dollars from the gas venture, which allegedly represented an amount equal to 10 percent of the approximate $170 million dollars that had allegedly been distributed to the family trusts at that time. Id. at ¶ 31. Defendant Natbony allegedly failed to properly represent Plaintiff in obtaining a payment of $17 million dollars from

4

Portland which allegedly resulted in the value of the $17 million dollar payment to be diminished. Id. at ¶¶ 31–32.

j) The gas venture assets were eventually sold for $2.55 billion dollars in 2007 which resulted in Plaintiff receiving a 10% share and a subsequent $15 million dollar bonus. Id. at ¶ 37.

k) As part of the damages Plaintiff alleged to have incurred, Plaintiff alleged that the $15 million dollar bonus was improperly recategorized which resulted in Plaintiff allegedly being "underpaid." Id.

l) Further, Defendants Kaplan and Natbony allegedly convinced Plaintiff to agree to the gas venture making payments of $17,582,000.00 to others Plaintiff alleged were unjustified and not to the benefit of the gas venture, which allegedly resulted in further damage to Plaintiff as a result of his interest in the venture (regardless of whether his interest was 10% or more). Id. at ¶ 37.

10.     As a result of the foregoing allegations, among others, including, but not limited to, Plaintiff's allegations that he was damaged by the Defendants' actions in connection with the $2.55 billion dollar sale of assets of the gas venture, that Plaintiff's $15 million dollar bonus was improperly paid, and that the Defendants improperly authorized a payment of $17,582,000.00, a reasonable reading of the Complaint demonstrates that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. See Baker v. Firestone Tire & Rubber Co., 537 F. Supp. 244, 246 (S.D. Fla. 1982) (recognizing that if a reasonable reading of the complaint discloses that the sum in controversy does in fact exceed the jurisdictional amount, the

jurisdictional amount will be found to exist); <u>see also</u> <u>Lee v. Altamil Corp.</u>, 457 F. Supp. 979 (M.D. Fla. 1978) (same).

### Diversity of Citizenship

11.     Diversity of citizenship is established by showing that the action is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3).

12.     As Katten is a limited liability partnership, diversity jurisdiction depends upon the citizenship of each member of Katten being diverse from that of each adverse party (*i.e.*, the Plaintiff). <u>See</u> <u>Carden v. Arkoma Associates</u>, 494 U.S. 185, 189, 192-197, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (providing that for diversity purposes, a partnership entity, unlike a corporation, is not, itself, deemed a citizen; rather, to meet the complete diversity requirement, all partners, limited as well as general, must be diverse from all parties on the opposing side). <u>See</u> e.g., <u>Swiger v. Allegheny Energy, Inc.</u>, 540 F.3d 179 (3d Cir. 2008) (considering citizenship of each member of the defendant law firm, a limited liability partnership, to determine whether complete diversity existed).

13.     At the time Plaintiff commenced this action:

        a)      Plaintiff was (and is) a resident of Florida.  <u>See</u> Complaint at ¶ 1 attached as Exhibit "1" to Composite Exhibit "A" attached hereto.

        b)      Defendant Natbony was (and is) a resident of New York.  <u>Id.</u> at ¶ 2.

        c)      Defendant Kaplan was (and is) a resident of New York.  <u>Id.</u> at ¶ 3.

   d)  Defendant Katten was (and is) an Illinois limited liability partnership, and its partners are (and were) comprised of United States citizens who were (and are) California, Connecticut, District Columbia, Illinois, Indiana, Maryland, New Jersey, New York, North Carolina, Virginia, and Texas.. See Complaint at ¶ 4 attached as Exhibit "1" to Composite Exhibit "A" attached hereto; Affidavit of Ted S. Helwig, Esq., attached hereto as Exhibit "C."

   e)  In addition, Katten has partners who were and are citizens of, and resided and reside in, the United Kingdom. See Affidavit of Ted S. Helwig, Esq., attached as Exhibit "C."

   f)  Katten's principal place of business was (and is) Illinois. Id.

   g)  Katten did (and does not) not maintain an office in Florida, and none of its partners are citizens of the State of Florida. Id.

  14.  Based on the foregoing, complete diversity between the Plaintiff and Defendants exists.

### Propriety of Removal

  15.  Pursuant to 28 U.S.C. § 1441(a), removal is proper because this is a civil action over which the United States District Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy meets the requirements of 28 U.S.C. § 1332(a).

  16.  This Notice is timely as it was filed within thirty (30) days after Katten was served with the Summons and Complaint from which it first ascertained that the case was removable.

17.     Defendants Natbony and Kaplan consent to and join in removal of this action. See Exhibit "B" attached hereto.

18.     The United States District Court for the Southern District of Florida, Fort Lauderdale Division, is the federal judicial district encompassing the 17th Judicial Circuit in and for Broward County, Florida, where the state court proceeding is pending, and, therefore, venue is proper pursuant to 28 U.S.C. § 1441(a).

19.     Accordingly, pursuant to 28 U.S.C. §§ 1331, 1441(b) and 1447(a), this lawsuit may be removed from the 17th Judicial Circuit in and for Broward County, Florida, and brought before the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

20.     Pursuant to 28 U.S.C. § 1446(d), written notice of filing this Notice will be served on the state court counsel of record for Plaintiff promptly after this Notice of Removal is filed. Additionally, a true and correct copy of this Notice will be filed with the Clerk of the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, promptly after this Notice is filed, a copy of which is attached hereto as Exhibit "D."

## Request for Further Argument

21.     If any question arises as to the propriety of the removal of this action, Katten respectfully requests the opportunity to file a brief and to make an oral argument in support of the position that this case is removable.

WHEREFORE, Katten hereby removes this case from the Circuit Court for the 17th Judicial District in and for Broward County, Florida, to this United States District Court.

AKERMAN SENTERFITT

By: _____

David I. Spector, Esq.
Fla. Bar No. 086540
david.spector@akerman.com
Venus A. Caruso, Esq.
Fla. Bar No. 790001
venus.caruso@akerman.com
Esperante Building – 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, FL  33401
Telephone: (561) 653-5000
Fax:         (561) 659-6313
*Attorneys for Defendant Katten Muchin Rosenman, LLP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8 day of May, 2009, I filed the foregoing document with the Clerk of the Court via hand delivery.  I also certify that the foregoing document is being served this day to all counsel of record identified in the attached Service List, via facsimile and U.S. Mail .

_____

David I. Spector

## SERVICE LIST

Glenn E. Goldstein, Esq.
Jerold I. Budney, Esq.
GREENBERG TRAURIG, P.A.
*Attorneys for Plaintiff*
401 East Las Olas Boulevard, Suite 2000
Ft. Lauderdale, FL  33301


Thomas J. Wiegand, Esq.
Gregory J. Miarecki, Esq.
WINSTON & STRAWN, LLP
*Attorneys for Plaintiff (to be admitted pro hac vice)*
35 West Wacker Drive
Chicago, IL 60601-9703


Harley S. Tropin, Esq.
Thomas A. Tucker Ronzetti, Esq.
KOZYAK TROPIN & THROCKMORTON, P.A.
*Attorneys for William Natbony and Thomas Kaplan*
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134


David I. Spector, Esq.
Venus A. Caruso, Esq.
AKERMAN SENTERFITT
*Attorneys for Katten Muchin Rosenman, LLP*
Esperante Building, Fourth Floor
222 Lakeview Ave., Suite 400
West Palm Beach, FL 33401

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.                    09017782

COMPLEX LITIGATION UNIT

GUMA AGUIAR,                    )
                               )
          Plaintiff,           )
                               )
vs.                            )
                               )
WILLIAM NATBONY, THOMAS        )
KAPLAN, and KATTEN MUCHIN      )
ROSENMAN LLP, an Illinois limited )
liability partnership,         )
                               )
          Defendants.          )
_____  )

A TRUE COPY

MAR 2 6 2009

## COMPLAINT

Plaintiff Guma Aguiar files this Complaint against Defendants William Natbony, Thomas

Kaplan, and Katten Muchin Rosenman LLP, an Illinois limited liability partnership, and alleges

as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Guma Aguiar ("Aguiar") is a resident of Broward County, Florida.

2.      Defendant William Natbony ("Natbony") is a resident of New York, and was a

partner of Defendant Katten Muchin Rosenman LLP at all relevant times through the beginning

of 2009. A substantial portion of the legal advice, representations and omissions which are the

subject of this Complaint were communicated by Natbony to Aguiar in Florida, and Natbony has

sued Aguiar in another action pending in a Florida federal court.

1

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com



EXHIBIT

A

3.    Defendant Thomas Kaplan ("Kaplan") is a resident of New York.  He has conducted business in Florida, and has sued Plaintiff Aguiar in another action currently pending in this Court.  Kaplan conspired with Nathony regarding the legal advice, representations and omissions which were communicated to Aguiar in Florida and are the subject of this Complaint, and has himself made material misrepresentations and omissions to Aguiar in Florida which are the subject of this Complaint.

4.    Defendant Katten Muchin Rosenman LLP ("Katten") is an Illinois limited liability partnership with offices in Illinois, North Carolina, Texas, New York, California, Washington, D.C., and the United Kingdom.  Katten has represented, and continues to represent, clients residing in Florida.  Further, Katten, through Nathony and other of its attorneys, communicated to Aguiar in Florida a substantial portion of the legal advice, representations and omissions which are the subject of this Complaint.

5.    This is an action at law in which the matter in controversy exceeds $15,000, exclusive of interest, costs and attorneys' fees.

6.    Venue is proper in Broward County, Florida pursuant to Florida Statutes § 47.011, because the underlying causes of action accrued, and a substantial part of the events and omissions giving rise to Aguiar's claims occurred, in Broward County, Florida.

7.    All conditions precedent to this action have been satisfied and fulfilled.

### FACTUAL ALLEGATIONS

8.    In 2003, Aguiar was working in the natural gas industry, and came to believe that he could form his own successful natural gas exploration company.  He spoke about his idea with his uncle, Defendant Kaplan, and the two agreed to be partners in the venture, with Kaplan agreeing to provide financing and Aguiar doing the work.

2

9.     Soon thereafter, Aguiar traveled to Houston and began working with geologists and other experts. Through this work, he became interested in an area in East Texas, largely in Robertson County, Texas, known as the Deep Bossier, which he believed could contain large natural gas reserves. Aguiar proposed to Kaplan that they obtain a large acreage position in this prospect, and Kaplan agreed.

10.     Ownership of the new venture of Aguiar and Kaplan was to be documented by Natbony, a partner in Katten's New York office. Natbony had worked for Kaplan in the past on other matters. Natbony told Aguiar that he represented both Aguiar and Kaplan equally in establishing an ownership structure for them, and that he recommended placing the ownership of the venture into trust because it would have tax advantages. Aguiar relied on those representations, and believed that he could trust Natbony as his attorney to protect his interests without seeking independent legal representation regarding those issues. Natbony then documented the ownership of the partnership between Aguiar and Kaplan, called Portland Energy Partners LP ("Portland"), placing it into two family trusts. Natbony named himself as the trustee for both trusts.

11.     Aguiar trusted both his uncle and mentor, Kaplan, as well as his attorney, Natbony, in creating this ownership structure. Following this and up to the present time, the ownership structure of the assets held by the ultimate partners Aguiar and Kaplan has been changed several times, pursuant to advice and representations communicated to Aguiar by Kaplan and Natbony.

12.     Aguiar continued to dedicate his efforts to identifying prospective unleased acreage, with Kaplan arranging the funding. To assist in the land identification and leasing effort, Aguiar entered into an agreement with Legends Exploration, LP ("Legends"). Legends

3

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

13 of 59

was a Texas-based partnership that provided technical and management support. Legends also handled most of the leasing arrangements for acreage in Texas. When funds were needed to acquire a lease, Aguiar would contact Natbony's office in New York, and Natbony or one of his designees would cause funds to be disbursed to Texas for that purpose.

13.     By late 2004, the Kaplan/Aguiar partnership had acquired approximately 30,000 acres worth of leases in the Deep Bossier, in what came to be known as the Amoruso field. At this point, Kaplan had arranged for about $9 million worth of funding.

14.     The value of the leases that Aguiar had located and acquired started to appreciate in value significantly almost from the start, particularly in 2004 after a third party drilled a very productive well on adjacent lands which validated the geologic premise of this natural gas "play." Through Aguiar's efforts, the partnership then entered into an exploration agreement with EnCana Oil & Gas (USA) Inc. ("EnCana"), in which EnCana agreed to complete an initial well that had already been drilled, and then drill and complete an additional eight wells. In return, EnCana would earn a 30% working interest in the prospect. Some of these wells indeed were highly successful, and the valuation of the lease portfolio continued to grow.

15.     In mid-2005, Leor Exploration and Production LLC ("Leor") was created and ownership of all of the leases was placed into Leor. Later in 2005, Leor entered into a transaction with Amaranth Partners in which, among other things, Amaranth loaned about $30 million to Leor. Part of the $30 million was used to pay back Kaplan in full, with interest, all funds that he had invested in connection with the Kaplan/Aguiar partnership. From that time forward, Kaplan had no capital investment remaining in Leor.

16.     Aguiar continued to dedicate his efforts and attention to building the value of the portfolio of leasing rights owned by Leor, and they indeed appreciated. In January 2006,

4

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

Goldman Sachs invested $45 million of its own partners' funds to acquire a 7.18% equity interest. Goldman Sachs conditioned its investment on the assurance that Aguiar would continue to lead the effort at Leor. The Goldman Sachs investment placed Leor at yet a higher value than before.

17. After the Goldman Sachs investment, Aguiar negotiated a second transaction with EnCana in which, among other things, EnCana agreed to pay approximately $243 million to Leor in return for an additional 20% working interest – the result being that EnCana and Leor were now 50/50 owners of the prospect. The $243 million payment to Leor resulted in about $170 million being paid by Leor in the summer of 2006 into the two family trusts, for which Natbony continued to serve as trustee.

18. By 2006, Aguiar had already created a great deal of value for Leor. While Aguiar understood at this time that he had an interest in the family trusts, which had an ownership interest in Leor, he was not receiving any current return on the profits of Leor and was living on a small salary. Accordingly, at some point in 2006, Aguiar approached Kaplan and Natbony, recounted his contributions to Leor's success, and requested a direct and current ownership interest over Leor.

19. Also in 2006, Aguiar approached Natbony and requested legal advice concerning his interests in the family trusts and how he could best obtain an additional interest that would assure him a current return on the profits of Leor.

20. At various times, including in 2006, Natbony pitched Aguiar for his legal business. Natbony wanted to serve as Aguiar's attorney for two reasons. First, Natbony's income from Katten depended in part on how much legal work Natbony was able to garner for

5

Katten.  Second, serving as Aguiar's attorney allowed Natbony to better serve the interests of Kaplan and Kaplan-related entities.

21.     Aguiar requested legal advice from Natbony and Katten, but Natbony did not advise Aguiar that he was conflicted from representing Aguiar.  To the contrary, Natbony provided Aguiar with legal advice, and caused other Katten attorneys to provide Aguiar with both oral and written legal advice, which was transmitted to Aguiar in Florida.  Natbony profited financially from this representation.

22.     Natbony and/or other Katten lawyers provided Aguiar with specific legal advice, and, in so doing, accepted duties that lawyers owe to their clients, including *inter alia*, duties of trust and loyalty.  Specifically, Natbony advised Aguiar that the above-referenced family trusts were created for the benefit of Kaplan and his family, as well as Aguiar and his family, including Aguiar's mother.  Natbony advised Aguiar that he and his mother were beneficiaries of each of the family trusts, and that the two family trusts owned the entirety of Leor.

23.     Also in his capacity as Aguiar's lawyer, Natbony negotiated with Kaplan for Aguiar to receive a 10 percent equity interest over Leor.  Natbony advised Aguiar that the remaining ownership interest over Leor would stay in the two family trusts, which would continue to include Aguiar and his mother as beneficiaries.  Aguiar relied on that advice by not seeking independent counsel regarding that issue because he believed Natbony was protecting his interests as his attorney.  Natbony provided this advice to Aguiar in part to keep Aguiar from demanding from Kaplan and Natbony the exact trust documents.

24.     Unbeknownst to Aguiar, Natbony and Kaplan had entered into an agreement to defraud him.  Specifically, during 2006, Natbony and Kaplan had agreed that while Aguiar would receive a 10 percent interest in Portland (Leor's parent company), they would eventually

6

take away his interest in the two family trusts. Kaplan and Natbony intentionally concealed from Aguiar their belief that Natbony could remove Aguiar and his family from being beneficiaries at his discretion, and their intent to do so. Because Aguiar was doing the lion's share of the work in building Leor as a company, and because Leor's investors – including Goldman Sachs – wanted Aguiar to continue in his role as CEO, Kaplan and Natbony agreed to conceal this plan from Aguiar until his services were no longer needed, so that Aguiar would continue working to add value for Leor.

25.    Consistent with that plan, Natbony continued to advise Aguiar throughout 2006 and 2007 that he was receiving a 10 percent interest in Leor's parent company in addition to his interest in the two family trusts.   Relying on those representations, Aguiar did not seek independent legal advice regarding that issue while continuing to work as CEO of Leor, and continued to build the value of the company.

26.    In order to encourage Aguiar's reliance in this regard, at various points in 2006 and 2007, both Kaplan and Natbony repeatedly advised Aguiar that he was a beneficiary of the two family trusts, and that his interest was worth hundreds of millions of dollars, and failed to advise him of their plan to terminate his interest in the family trusts once he was no longer needed.  As part of this plan, during 2006 and 2007, Natbony and other attorneys at Katten represented that Aguiar and his family members were beneficiaries of the family trusts.  For example, during this timeframe, various Katten attorneys would request personal information from Aguiar, such as Social Security numbers of his children, wife and siblings, so that they could perform actions related to their status as beneficiaries of the family trusts.

7

27.     While representing Aguiar in this series of discussions and transactions, both Natbony and Katten had a conflict of interest in representing Aguiar at the same time as they represented Kaplan, Portland, and other Kaplan-related entities.

28.     Natbony ultimately advised Aguiar to sign an agreement giving him 10 percent interest in Portland, which Aguiar did on or about October 31, 2006. However, at this time, Natbony knew that Aguiar could and should have received a greater current interest than 10 percent. Natbony was acting in the financial interests of his preferred clients – Kaplan and the entities that he controlled – and against the financial interests of his client Aguiar. Natbony's legal representation of Aguiar enabled Natbony to obtain a better transaction for Kaplan and the Kaplan-related entities, because Aguiar relied on Natbony protecting Aguiar's interests as Aguiar's attorney. This damaged Aguiar, in that he ended up receiving a smaller percentage of Portland than he would have absent his reliance on Natbony's statements and/or advice.

29.     In November, 2006, about two weeks after securing Aguiar's signature on the agreement documenting the 10 percent interest, Natbony again used his position as Aguiar's lawyer to further his own self-interest and that of Kaplan. Using his role as trustee of the family trusts, Natbony undertook efforts to convert the trusts to "unitrusts." Natbony did this so that he would be able to make additional distributions to Kaplan and his wife. This again favored Kaplan and the Kaplan-related entities over Aguiar and his family, who also were beneficiaries of the family trusts.

30.     However, contrary to his obligations as Aguiar's lawyer, Natbony failed to fully inform Aguiar of the consequences of the unitrust conversion, and did not give Aguiar a full and fair opportunity to learn about or approve of this conversion. To the contrary, Natbony merely informed Aguiar that the conversion would be occurring and that he should do nothing other than

8

consent to it. In doing so, he omitted material information about the consequences of that conversion and its role in the conspiracy between Kaplan and Natbony which would have caused Aguiar to refrain from approving the conversion if he had been aware of those omitted material facts. These material omissions damaged Aguiar by reducing the value of the family trusts and the value of his interest in those trusts.

31.     Natbony also failed to properly represent Aguiar in obtaining a payment of $17 million that Portland had agreed to give to Aguiar. In the summer of 2006, Kaplan and Natbony agreed that Aguiar was to receive a payment of approximately $17 million from Portland, representing an amount equal to 10 percent of the approximately $170 million that had been distributed to the family trusts at that time. Rather than represent Aguiar's interests in obtaining that payment, however, as Aguiar relied on him to do, Natbony represented the interests of Portland and the Kaplan-related entities by advising Aguiar to accept payment of this amount in various other ways.

32.     As one of these ways, Natbony documented in January, 2007, a loan from Kaplan to Aguiar in the amount of $7 million. Natbony advised Aguiar that the principal amount of the loan did not have to be repaid until after the initial trust period ended, and that at that time, he would provide Aguiar a $7 million payment out of the family trusts to repay this loan. Yet, although Aguiar again relied on Natbony as his lawyer to provide him with complete and accurate advice regarding this issue, Natbony again said nothing to Aguiar about his intent to eliminate Aguiar's interest in the trusts before that occurred. These misrepresentations and omissions harmed Aguiar by effectively diminishing the value of the $17 million that he was owed by Portland.

9

33.     In early 2007, with Aguiar continuing to act as the CEO of Leor, Leor was able to obtain an equity investment by Merrill Lynch in the amount of $150 million as well as a credit facility syndicated by J.P. Morgan that was able to expand to $300 million. These amounts allowed Leor to continue to make money, expand, and thrive.

34.     Also in 2007, as a result of Kaplan and Natbony removing all or substantially all of the assets of Portland to a new partnership -- Pardus LP -- Aguiar was provided a 10% interest in Pardus LP. Pardus LLC was created to serve as the general partner. At this point, Kaplan was Chairman of Leor's Board of Directors, and Natbony also sat on Leor's Board.

35.     In May, 2007, as a reward for Natbony's subservience to Kaplan's interests, Kaplan employed Natbony full-time as the head of Kaplan's family office -- Tigris Financial Group, Ltd. As such, Natbony directed and controlled Kaplan's various interests. Yet, Natbony and Katten continued to represent Natbony as being a partner at Katten after this time and through the beginning of 2009, though Natbony did little, if any, work on behalf of Katten after May, 2007. In and after May, 2007, Kaplan provided to Natbony not only lucrative pay but also an equity interest over Leor by providing to Natbony some equity in Pardus LLC, which equity Natbony had helped Kaplan set aside for himself, contrary to Aguiar's interests.

36.     Eventually, Natbony, Aguiar, and Kaplan concluded that they should undertake to sell Leor's interests in the Deep Bossier. To this end, Natbony and Aguiar opened negotiations with EnCana over the sale of Leor's assets.

37.     By late 2007, Leor sold its assets in the Deep Bossier to EnCana for $2.55 billion. Pardus LP distributed most of these funds to the partners, and Aguiar received a 10 percent share of these funds. In addition, Aguiar later received a $15 million (plus an amount to cover the taxes associated with this payment) bonus from Pardus LP as a reward for helping to engineer

10

this transaction.  However, in 2008, Pardus LLC recategorized the $15+ million bonus as a regular distribution to Aguiar under his 10 percent current equity interest, and in that way underpaid Aguiar for that interest.

38.     Kaplan and Natbony also have controlled the activities and payments made by Leor, to the detriment of Aguiar.  In late 2007 or early 2008, Kaplan and Natbony arranged for Leor to pay to certain individuals and entities amounts totaling $17,582,000, which were unjustified and not of benefit to Leor or Pardus LP.  They gained Aguiar's initial willingness to allow those payments on the representation that Kaplan would reimburse Leor fully for those amounts, but upon information and belief those amounts still have not been reimbursed by Kaplan to Leor.

39.     Concerned with this turn of events, Aguiar asked Kaplan and Natbony for an accounting of Leor, Pardus LP, and the two family trusts, but this request was denied.  And in retaliation for seeking that accounting, Natbony wrote Aguiar a letter on Leor letterhead on December 12, 2008, purporting to terminate him as CEO of Leor.  That same day, Natbony sent Aguiar a letter purporting to terminate his interest in Pardus LP as of December 31, 2008.

40.     On December 30, 2008, Aguiar filed a lawsuit in the District Court of Robertson County, Texas, seeking, among other things, an accounting of the two family trusts, and seeking relief from the Pardus entities' breach of contract and breach of fiduciary duty in connection with the recategorization of his $15+ million bonus.

41.     After Aguiar filed this lawsuit, and in retaliation, Kaplan and Natbony plotted to harass him to such an extent that he would not pursue his Texas claims.  Consistent with that goal, Kaplan and Natbony caused the family trusts, Pardus LP, Pardus LLC, and Leor to file a lawsuit against Aguiar in the United States District Court for the Southern District of Florida in

11

January, 2009. In this lawsuit, they disingenuously alleged that Aguiar committed misconduct as CEO of Leor.

42.     In a further retaliatory strike, in January of 2009, Kaplan filed a lawsuit against Aguiar in this Court, seeking damages allegedly suffered in connection with an organization known as the Lillian Jean Kaplan Foundation. In order to file that lawsuit, Kaplan misrepresented that he was a "member" of that Foundation. Kaplan and Natbony used that lawsuit to attack Aguiar personally for the purpose of halting Aguiar's pursuit of an accounting in Texas.

43.     In yet another effort to destroy Aguiar, Natbony – acting as trustee of the family trusts – chose that time to follow through on his long-held intent to completely remove Aguiar and his family members as beneficiaries of both trusts. In approximately January of 2009, Natbony caused the family trust instruments to be amended so as to eliminate Aguiar's interest in the trusts, as well as the interests of his family members.

### CAUSES OF ACTION

### Count I – Fraud
#### (against Natbony and Kaplan)

44.     Aguiar incorporates by reference the allegations contained in paragraphs 1-43.

45.     Natbony and Kaplan intentionally and knowingly made various material false misrepresentations and omissions to Aguiar, as more specifically described above, with knowledge of the falsity of those misrepresentations and omissions and with the intent that Aguiar would rely on them.

46.     Aguiar justifiably relied on these material false misrepresentations and omissions to his detriment, and as a result, suffered damages.

12

Greenberg Traurig, P.A. = Attorneys at Law = 401 East Las Olas Boulevard = Suite 2000 = Fort Lauderdale, FL 33301 = Tel 954.765.0500 = Fax 954.765.1477 = www.gtlaw.com

22 of 59

### Count II – Negligent Misrepresentation
#### (against Natbony and Kaplan)

47.    Aguiar incorporates by reference the allegations contained in paragraphs 1-43.

48.    Natbony and Kaplan negligently made various material false representations to Aguiar, as more specifically described above, with the intent that Aguiar would rely on them.

49.    Aguiar justifiably relied on these material misrepresentations to his detriment, and as a result, suffered damages.

### Count III – Constructive Fraud
#### (against Natbony and Katten)

50.    Aguiar incorporates by reference the allegations contained in paragraphs 1-43.

51.    As Aguiar's attorneys, Natbony and Katten owed Aguiar duties of loyalty and trust, including the duty to avoid self-dealing, under a confidential or fiduciary relationship. By providing Aguiar with legal advice, both Natbony and Katten accepted those duties.

52.    Through the above-referenced actions, Natbony and Katten abused these duties to Aguiar, and/or took unconscionable advantage of Aguiar. Natbony and Katten took improper advantage of their fiduciary relationship with Aguiar at Aguiar's expense through the above-referenced material misrepresentations and omissions.

53.    Aguiar has been damaged, and Natbony and Katten profited to Aguiar's detriment, as a proximate result of the foregoing constructive fraud perpetrated by Defendants Natbony and Katten.

13

**Count IV – Breach of Fiduciary Duty**
**(against Natbony and Katten)**

54.    Aguiar incorporates by reference the allegations contained in paragraphs 1-43.

55.    As Aguiar's attorneys, Natbony and Katten owed Aguiar fiduciary duties of loyalty and trust, including the duty to avoid self-dealing.  By providing Aguiar with legal advice, both Natbony and Katten accepted those duties.

56.    Through the above-referenced actions, Natbony and Katten breached these fiduciary duties to Aguiar.

57.    As a result of his reliance on the legal advice of Natbony and Katten, Aguiar has suffered damages caused by Natbony's and Katten's breaches of their fiduciary duty to Aguiar.

**Count V – Legal Malpractice**
**(against Natbony and Katten)**

58.    Aguiar incorporates by reference the allegations contained in paragraphs 1-43.

59.    Defendants Natbony and other attorneys at Katten were acting as attorneys for Plaintiff Aguiar.  In that capacity, they had a duty to exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise, a duty of good faith, a duty to act in Aguiar's best interests, and a duty to inform him of any conflicts of interest with other clients.

60.    Natbony and/or Katten breached these duties by knowingly representing Kaplan and Aguiar even though they had conflicting interests, by, *inter alia*, favoring Kaplan and other Kaplan-related entities over Aguiar because it was more lucrative for them to do so, and by making the material misrepresentations and omissions discussed above.

61.    As more specifically described above, Aguiar was damaged, and Natbony and Katten profited to Aguiar's detriment, as a result of this breach of duties.

14

## Count VI – Conspiracy
### (against Natbony and Kaplan)

62.    Aguiar incorporates by reference the allegations contained in paragraphs 1-46 and 51-61.

63.    Natbony and Kaplan agreed and conspired to defraud Aguiar out of his rightful ownership interest in Leor, and in doing so to cause Natbony and Katten to breach their fiduciary duties as attorneys to Aguiar.

64.    To that end, they engaged in the alleged conduct described above, and conspired to cause the commission of the above-described tortious conduct.

65.    As a result of this conspiracy, Aguiar suffered damages.

WHEREFORE, Plaintiff Aguiar requests the Court to enter judgment in favor of Aguiar against the Defendants awarding Aguiar compensatory and consequential damages, costs and such other relief to which he may be justly entitled.  Plaintiff Aguiar also reserves the right to seek punitive damages against Defendants pursuant to Florida Statutes § 768.72.

JURY DEMAND: Plaintiff demands a trial by jury.

Respectfully submitted,

WINSTON & STRAWN LLP
Attorneys for Plaintiff
Thomas J. Wiegand
Gregory J. Miarecki
35 West Wacker Drive
Chicago, IL  60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700
(pro hac vice motion to be filed)

GREENBERG TRAURIG, P.A.
Attorneys for Plaintiff
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
Telephone:  (954) 765-0500
Facsimile:  (954) 765-1477

GLENN E. GOLDSTEIN
Florida Bar No. 435260
JEROLD I. BUDNEY
Florida Bar No. 0283444

FTL:107,292,859v2 104057.010800

15

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

25 of 59

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO. 09-017782
COMPLEX BUSINESS UNIT

GUMA AGUIAR,                                )
                                           )
            Plaintiff,                      )
                                           )          **SUMMONS**
vs.                                         )
                                           )
WILLIAM NATBONY, THOMAS                     )
KAPLAN, and KATTEN MUCHIN                   )
ROSENMAN LLP, an Illinois limited           )
liability partnership,                      )
                                           )
            Defendants.                     )
_____     )

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE:**

**YOU ARE HEREBY COMMANDED** to serve this Summons and copies of the Complaint, First Set of
Requests for Production of Documents, Notice of Service of First Set of Interrogatories and First Set of
Interrogatories in this action on Defendant:

**KATTEN MUCHIN ROSENMAN, LLP,**
**An Illinois limited liability partnership**
**By serving it's Registered Agent**
**MARK BROUTMAN**
**525 West Monroe Street**
**Chicago, IL 60661-3693**

Defendant is hereby required to serve written defenses to the **Complaint** on Plaintiff's attorney, GLENN
E. GOLDSTEIN, Esq., Fla. Bar No. 435260, GREENBERG, TRAURIG, P.A., whose address is 401 East
Las Olas Boulevard, Suite 2000, Fort Lauderdale, Florida 33301, within **twenty (20)** days after service of
this summons upon Defendant, and to file the original of the defenses with the Clerk of this Court either
before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will
be entered against that defendant for the relief demanded in the complaint or petition.

DATED on _____.

APR 16 2009        CLERK OF THE COURT
                   MICHAEL CORSARO

                   By:_____
                         Deputy Clerk

                   A TRUE COPY
                   Circuit Court Seal

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuena, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessou
FTL 107,300,820v1 4-15-09

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. 09-017782

COMPLEX LITIGATION UNIT

GUMA AGUIAR,

       Plaintiff,

Vs.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN LLP, an Illinois
Limited liability partnership,

       Defendants.

_____

## DEFENDANT KAPLAN'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant Kaplan hereby files his Answer and Affirmative Defenses to the Complaint and states as follows:

1.    Defendant Kaplan admits the allegation contained in Paragraph 1 of the Complaint.

2.    Defendant Kaplan admits that he is a resident of New York and that Defendant Natbony was a partner of Defendant Katten Muchin Rosenman LLP and denies the balance of the allegation contained in Paragraph 2 of the Complaint.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508

28 of 59

3.      Defendant Kaplan admits that he is a resident of New York and has sued Plaintiff Aguiar in another action pending in this Court and denies the balance of the allegations in Paragraph 3 of the Complaint.

4.      Defendant Kaplan admits that Defendant Katten is an Illinois limited liability partnership with offices in Illinois, North Carolina, Texas, New York, California, Washington D.C. and the United Kingdom and denies the balance of the allegations in Paragraph 4 of the Complaint.

5.      Defendant Kaplan admits Paragraph 5 for purposes of jurisdiction only.

6.      Defendant Kaplan admits that venue is proper in Broward County.

7.      Defendant Kaplan denies Paragraph 7.

8.      Defendant Kaplan denies Paragraph 8.

9.      Defendant Kaplan denies Paragraph 9.

10.     Defendant Kaplan admits that he has served as counsel for Kaplan and denies the balance of the allegations in Paragraph 10 of the Complaint.

11.     Defendant Kaplan denies Paragraph 11.

12.     Defendant Kaplan denies Paragraph 12.

13.     Defendant Kaplan denies Paragraph 13.

14.     Defendant Kaplan denies Paragraph 14.

15.     Defendant Kaplan denies Paragraph 15.

16.     Defendant Kaplan denies Paragraph 16.

17.     Defendant Kaplan denies Paragraph 17.

18.     Defendant Kaplan denies Paragraph 18.

19.     Defendant Kaplan denies Paragraph 19.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
2

29 of 59

20.    Defendant Kaplan denies Paragraph 20.

21.    Defendant Kaplan denies Paragraph 21.

22.    Defendant Kaplan denies Paragraph 22.

23.    Defendant Kaplan denies Paragraph 23.

24.    Defendant Kaplan denies Paragraph 24.

25.    Defendant Kaplan denies Paragraph 25.

26.    Defendant Kaplan denies Paragraph 26.

27.    Defendant Kaplan denies Paragraph 27.

28.    Defendant Kaplan admits that on or about October 31, 2006, Aguiar

signed an agreement giving him 10 percent interest in Portland and denies the balance of

the allegations contained in Paragraph 28.

29.    Defendant Kaplan denies Paragraph 29.

30.    Defendant Kaplan denies Paragraph 30.

31.    Defendant Kaplan denies Paragraph 31.

32.    Defendant Kaplan denies Paragraph 32.

33.    Defendant Kaplan admits the allegation that in 2007 Leor was able to

obtain financing, and denies the remainder of Paragraph 33.

34.    Defendant Kaplan admits that Aguiar was provided a 10% interest in

Pardus LP and the final sentence of Paragraph 34.

35.    Defendant Kaplan denies Paragraph 35.

36.    Defendant Kaplan denies Paragraph 36.

37.    Defendant Kaplan denies Paragraph 37.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
3

30 of 59

38.     Defendant Kaplan denies Paragraph 38.

39.     Defendant Kaplan admits that Aguiar was terminated as CEO of Leor on or before December 30, 2008 and denies the balance of the allegations in Paragraph 39.

40.     Defendant Kaplan admits Paragraph 40.

41.     Defendant Kaplan denies Paragraph 41.

42.     Defendant Kaplan denies Paragraph 42.

43.     Defendant Kaplan denies Paragraph 43.

**Count I Fraud**

44.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

45.     Defendant Kaplan denies Paragraph 45.

46.     Defendant Kaplan denies Paragraph 46.

**Count II-Negligent Misrepresentation**

47.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

48.     Defendant Kaplan denies Paragraph 48.

49.     Defendant Kaplan denies Paragraph 49.

**Count VI- Conspiracy**

50.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

51.     Defendant Kaplan denies Paragraph 52.

52.     Defendant Kaplan denies Paragraph 53.

53.     Defendant Kaplan denies Paragraph 54.

55.     Any allegation of the Complaint not specifically admitted is hereby denied.

## AFFIRMATIVE DEFENSES

1.     As his First Affirmative Defense, Defendant Kaplan states that the Complaint fails to state a cause of action for which relief can be granted and should therefore be dismissed.

2.     As his Second Affirmative Defense, Defendant Kaplan states that the Complaint fails to state a cause of action in that the Plaintiff has failed to set forth all averments of fraud with particularity in violation of Fla. R. Civ. P. 1.120(b) and should therefore be dismissed.

3.     As his Third Affirmative Defense, Defendant Kaplan states that Plaintiff is estopped from bringing the claims set forth in the Complaint.

4.     As his Fourth Affirmative Defense, Defendant Kaplan states that the Plaintiff is barred from bringing the claims set forth in the Complaint by virtue of his own misconduct and unclean hands.

5.     As his Fifth Affirmative Defense, Defendant Kaplan states the Complaint should be dismissed for lack of personal jurisdiction.

6.     As his Sixth Affirmative Defense, Defendant Kaplan states that the Complaint should be dismissed for insufficiency of process.

7.     As his Seventh Affirmative Defense, Defendant Kaplan states that the Complaint should be dismissed for insufficiency of service of process.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
5

32 of 59

8.     As his Eight Affirmative Defense, Defendant Kaplan states that the Plaintiff's claims are barred in whole or part by the applicable statutes of limitations.

9.     As his Ninth Affirmative Defense, Defendant Kaplan states that the Plaintiff's claims are barred in whole or part by the doctrines of release and/or waiver.

Wherefore Defendant Kaplan requests that this Court enter and Order dismissing the Complaint and entering Judgment in his favor for attorney's fees and costs and any other relief this Court deems just and appropriate.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
Attorneys for Plaintiff
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile:  (305) 372-3508

By:_____
    Harley S. Tropin
    Florida Bar No. 241253
    Thomas A. Tucker Ronzetti
    Florida Bar No. 965723

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was served by U.S. Mail on April 21, 2009 upon:  Glenn Goldstein, Esq., Jerry Budney, Esq., Greenberg Traurig, P.A., Suite 2000, 401 East Las Olas Blvd., Fort Lauderdale, Florida 33301 and Gregory J. Miarecki, Esq., Winston & Strawn, LLP, 35 West Wacker Drive, Chicago, Illinois 60601-9703.

By_____
    Thomas A. Tucker Ronzetti

300405

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
6

33 of 59

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. 09-017782

COMPLEX LITIGATION UNIT

GUMA AGUIAR,

       Plaintiff,

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN LLP, an Illinois
Limited liability partnership,

       Defendants.

-----

## DEFENDANT NATBONY'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant William Natbony answers the Complaint, and alleges:

1.     Defendant Natbony admits the allegation contained in Paragraph 1 of the Complaint.

2.     Defendant Natbony admits that he is a resident of New York and that he was a partner of Defendant Katten Muchin Rosenman LLP and denies the balance of the allegations contained in Paragraph 2 of the Complaint.

3.     Defendant Natbony admits that Defendant Thomas Kaplan is a resident of New York and has sued Plaintiff Aguiar in another action pending in this Court and denies the balance of the allegations in Paragraph 3 of the Complaint.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508

34 of 59

CASE NO. 09-017782

    4.      Defendant Natbony admits that Defendant Katten is an Illinois limited liability partnership with offices in Illinois, North Carolina, Texas, New York, California, Washington D.C. and the United Kingdom and denies the balance of the allegations in Paragraph 4 of the Complaint.

    5.      Defendant Natbony admits Paragraph 5 for purposes of jurisdiction only.

    6.      Defendant Natbony admits that venue is proper in Broward County.

    7.      Defendant Natbony denies Paragraph 7.

    8.      Defendant Natbony denies Paragraph 8.

    9.      Defendant Natbony denies Paragraph 9.

    10.    Defendant Natbony admits that he has served as counsel for Kaplan and denies the balance of the allegations in Paragraph 10 of the Complaint.

    11.    Defendant Natbony denies Paragraph 11.

    12.    Defendant Natbony denies Paragraph 12.

    13.    Defendant Natbony denies Paragraph 13.

    14.    Defendant Natbony denies Paragraph 14.

    15.    Defendant Natbony denies Paragraph 15.

    16.    Defendant Natbony denies Paragraph 16.

    17.    Defendant Natbony denies Paragraph 17.

    18.    Defendant Natbony denies Paragraph 18.

    19.    Defendant Natbony denies Paragraph 19.

    20.    Defendant Natbony denies Paragraph 20.

    21.    Defendant Natbony denies Paragraph 21.

    22.    Defendant Natbony denies Paragraph 22.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
2

35 of 59

23.     Defendant Natbony denies Paragraph 23.

24.     Defendant Natbony denies Paragraph 24.

25.     Defendant Natbony denies Paragraph 25.

26.     Defendant Natbony denies Paragraph 26.

27.     Defendant Natbony denies Paragraph 27.

28.     Defendant Natbony admits that on or about October 21, 2006, Aguiar

signed an agreement giving him 10 percent interest in Portland and denies the balance of

the allegations contained in Paragraph 28.

29.     Defendant Natbony denies Paragraph 29.

30.     Defendant Natbony denies Paragraph 30.

31.     Defendant Natbony denies Paragraph 31.

32.     Defendant Natbony denies Paragraph 32.

33.     Defendant Natbony admits the allegation that in 2007 Leor was able to

obtain financing, and denies the reminder of Paragraph 33.

34.     Defendant Natbony admits that Aguiar was provided a 10% interest in

Pardus LP and that Kaplan was Chairman of Leor's Board of Directors, and denies the

remainder of Paragraph 34.

35.     Defendant Natbony denies Paragraph 35.

36.     Defendant Natbony denies Paragraph 36.

37.     Defendant Natbony denies Paragraph 37.

38.     Defendant Natbony denies Paragraph 38.

39.     Defendant Natbony  admits that Aguiar was terminated as CEO of Leor on

or before December 30, 2008 and denies the balance of the allegations in Paragraph 39.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
3

36 of 59

CASE NO. 09-017782

40.     Defendant Natbony admits the allegation of Paragraph 40 that on or about December 30, 2008, Aguiar filed a lawsuit in the District Court of Robertson County, Texas.

41.     Defendant Natbony denies Paragraph 41.

42.     Defendant Natbony denies Paragraph 42.

43.     Defendant Natbony denies Paragraph 43.

**Count I Fraud**

44.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

45.     Defendant Natbony denies Paragraph 45.

46.     Defendant Natbony denies Paragraph 46.

**Count II-Negligent Misrepresentation**

47.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

48.     Defendant Natbony denies Paragraph 48.

49.     Defendant Natbony denies Paragraph 49.

**Count III- Constructive Fraud**

50.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

51.     Defendant Natbony denies Paragraph 51.

52.     Defendant Natbony denies Paragraph 52.

53.     Defendant Natbony denies Paragraph 53.

**Count IV- Breach of Fiduciary Duty**

CASE NO. 09-017782

54.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

55.     Defendant Natbony denies Paragraph 55.

56.     Defendant Natbony denies Paragraph 56.

57.     Defendant Natbony denies Paragraph 57.

### Count V- Legal Malpractice

58.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

59.     Defendant Natbony denies Paragraph 59.

60.     Defendant Natbony denies Paragraph 60.

61.     Defendant Natbony denies Paragraph 61.

### Count VI- Conspiracy

62.     Defendant incorporates by reference the answers to the allegations in paragraph 1-43.

63.     Defendant Natbony denies Paragraph 63.

64.     Defendant Natbony denies Paragraph 64.

65.     Defendant Natbony denies Paragraph 65.

66.     Any allegation of the Complaint not specifically admitted is hereby denied.

### AFFIRMATIVE DEFENSES

1.     As his First Affirmative Defense, Defendant Natbony states that the Complaint fails to state a cause of action for which relief can be granted and should therefore be dismissed.

CASE NO. 09-017782

     2.     As his Second Affirmative Defense, Defendant Natbony states that Counts I-III and VI fail to state a cause of action in that the Plaintiff has failed to set forth all averments of fraud with particularity in violation of Fla. R. Civ. P. 1.120(b) and should therefore be dismissed.

     3.     As his Third Affirmative Defense, Defendant Natbony states that Plaintiff is estopped by his conduct from bringing the claims set forth in the Complaint.

     4.     As his Fourth Affirmative Defense, Defendant Natbony states that the Plaintiff is barred from bringing the claims set forth in the Complaint by virtue of his own misconduct and unclean hands.

     5.     As his Fifth Affirmative Defense, Defendant Natbony states the Complaint should be dismissed for lack of personal jurisdiction.

     6.     As his Sixth Affirmative Defense, Defendant Natbony states that the Complaint should be dismissed for insufficiency of process.

     7.     As his Seventh Affirmative Defense, Defendant Natbony states that the Complaint should be dismissed for insufficiency of service of process.

     8.     As his Eight Affirmative Defense, Defendant Natbony states that the Plaintiff's claims are barred in whole or part by the applicable statutes of limitations.

     9.     As his Ninth Affirmative Defense, Defendant Natbony states that the Plaintiff's claims are barred in whole or part by the doctrines of release and/or waiver.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
6

39 of 59

CASE NO. 09-017782

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
Attorneys for Plaintiff
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: _____
Harley S. Tropin
Florida Bar No. 241253
Thomas A. Tucker Ronzetti
Florida Bar No. 965723

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was served by U.S. Mail on April 21, 2009 upon: Glenn Goldstein, Esq., Jerry Budney, Esq., Greenberg Traurig, P.A., Suite 2000, 401 East Las Olas Blvd., Fort Lauderdale, Florida 33301 and Gregory J. Miarecki, Esq., Winston & Strawn, LLP, 35 West Wacker Drive, Chicago, Illinois 60601-9703.

By _____
Thomas A. Tucker Ronzetti

300403

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508
7

40 of 59

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GUMA AGUIAR,

CASE NO.: 09017782 07

COMPLEX LITIGATION UNIT

Plaintiff,

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN, LLP, an Illinois limited
liability partnership,

Defendants.

_____/

## DEFENDANT, KATTEN MUCHIN ROSENMAN, LLP'S, ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant, Katten Muchin Rosenmann, LLP ("KATTEN") hereby files its Answer and

Affirmative Defenses to Plaintiff, Guma Aguiar's ("Plaintiff"), Complaint as follows:

### PARTIES, JURISDICTION AND VENUE

1.     KATTEN is without knowledge as to the allegations contained in paragraph 1

and, therefore, denies same.

2.     KATTEN admits that Defendant William Natbony is a resident of New York and

that he was a partner, at times, of KATTEN.  KATTEN also admits there is another action

pending in a Florida federal court in which Defendant Natbony and Plaintiff are both named

parties. KATTEN is without knowledge as to the remaining allegations contained in paragraph 2

and, therefore, denies same.

1 of 12

{WP585655;1}

3. KATTEN admits that Defendant Thomas Kaplan is a resident of New York and has sued Plaintiff Aguiar in another action pending in this Court. KATTEN is without knowledge as to the remaining allegations contained in paragraph 3 and, therefore, denies same.

4. KATTEN admits that it is an Illinois limited liability partnership with offices in Illinois, North Carolina, Texas, New York, California, and Washington, D.C. KATTEN denies the remaining allegations contained in paragraph 4.

5. KATTEN admits the allegations contained in paragraph 5 for jurisdictional purposes only; otherwise, KATTEN denies the allegations contained in paragraph 5.

6. KATTEN is without knowledge as to the allegations contained in paragraph 6 and, therefore, denies same.

7. KATTEN is without knowledge as to the allegations contained in paragraph 7 and, therefore, denies same.

## FACTUAL ALLEGATIONS

8. KATTEN is without knowledge as to the allegations contained in paragraph 8 and, therefore, denies same.

9. KATTEN is without knowledge as to the allegations contained in paragraph 9 and, therefore, denies same.

10. KATTEN admits that Defendant Natbony performed services for Kaplan in the past on other matters. KATTEN is without knowledge as to the remaining allegations contained in paragraph 10 and, therefore, denies same.

11. KATTEN is without knowledge as to the allegations contained in paragraph 11 and, therefore, denies same.

2 of 12

{WP585655;1}

12.   KATTEN is without knowledge as to the allegations contained in paragraph 12 and, therefore, denies same.

13.   KATTEN is without knowledge as to the allegations contained in paragraph 13 and, therefore, denies same.

14.   KATTEN is without knowledge as to the allegations contained in paragraph 14 and, therefore, denies same.

15.   KATTEN is without knowledge as to the allegations contained in paragraph 15 and, therefore, denies same.

16.   KATTEN is without knowledge as to the allegations contained in paragraph 16 and, therefore, denies same.

17.   KATTEN is without knowledge as to the allegations contained in paragraph 17 and, therefore, denies same.

18.   KATTEN is without knowledge as to the allegations contained in paragraph 18 and, therefore, denies same.

19.   KATTEN is without knowledge as to the allegations contained in paragraph 19 and, therefore, denies same.

20.   KATTEN is without knowledge as to the allegations contained in paragraph 20 and, therefore, denies same.

21.   KATTEN is without knowledge as to the allegations contained in paragraph 21 and, therefore, denies same.

22.   KATTEN is without knowledge as to the allegations contained in paragraph 22 and, therefore, denies same.

{WP585655;1}

23.    KATTEN is without knowledge as to the allegations contained in paragraph 23 and, therefore, denies same.

24.    KATTEN is without knowledge as to the allegations contained in paragraph 24 and, therefore, denies same.

25.    KATTEN is without knowledge as to the allegations contained in paragraph 25 and, therefore, denies same.

26.    KATTEN is without knowledge as to the allegations contained in paragraph 26 and, therefore, denies same.

27.    KATTEN is without knowledge as to the allegations contained in paragraph 27 and, therefore, denies same.

28.    KATTEN is without knowledge as to the allegations contained in paragraph 28 and, therefore, denies same.

29.    KATTEN is without knowledge as to the allegations contained in paragraph 29 and, therefore, denies same.

30.    KATTEN is without knowledge as to the allegations contained in paragraph 30 and, therefore, denies same.

31.    KATTEN is without knowledge as to the allegations contained in paragraph 31 and, therefore, denies same.

32.    KATTEN is without knowledge as to the allegations contained in paragraph 32 and, therefore, denies same.

33.    KATTEN is without knowledge as to the allegations contained in paragraph 33 and, therefore, denies same.

{WP585655;1}

34.    KATTEN is without knowledge as to the allegations contained in paragraph 34 and, therefore, denies same.

35.    KATTEN is without knowledge as to the allegations contained in paragraph 35 and, therefore, denies same.

36.    KATTEN is without knowledge as to the allegations contained in paragraph 36 and, therefore, denies same.

37.    KATTEN is without knowledge as to the allegations contained in paragraph 37 and, therefore, denies same.

38.    KATTEN is without knowledge as to the allegations contained in paragraph 38 and, therefore, denies same.

39.    KATTEN is without knowledge as to the allegations contained in paragraph 39 and, therefore, denies same.

40.    KATTEN is without knowledge as to the allegations contained in paragraph 40 and, therefore, denies same.

41.    KATTEN is without knowledge as to the allegations contained in paragraph 41 and, therefore, denies same.

42.    KATTEN is without knowledge as to the allegations contained in paragraph 42 and, therefore, denies same.

43.    KATTEN is without knowledge as to the allegations contained in paragraph 43 and, therefore, denies same.

{WP585655;1}

## **CAUSES OF ACTION**

### **Count I – Fraud**
### **(against Natbony and Kaplan)**

44.     Inasmuch as the allegations contained in paragraphs 44 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

45.     Inasmuch as the allegations contained in paragraphs 45 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

46.     Inasmuch as the allegations contained in paragraphs 46 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

### **Count II – Negligent Misrepresentation**
### **(against Natbony and Kaplan)**

47.     Inasmuch as the allegations contained in paragraphs 47 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

48.     Inasmuch as the allegations contained in paragraphs 48 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

49.     Inasmuch as the allegations contained in paragraphs 49 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

### **Count III – Constructive Fraud**
### **(against Natbony and Katten)**

50.     KATTEN re-alleges and incorporates its answers contained in paragraph 1–43 as if fully set forth herein.

51.     Denied.

52.     Denied.

53.     Denied.

6 of 12

{WP585655;1}

### Count IV– Breach of Fiduciary Duty
### (against Natbony and Katten)

54.   KATTEN re-alleges and incorporates its answers contained in paragraph 1–43 as if fully set forth herein.

55.   Denied.

56.   Denied.

57.   Denied.

### Count V– Legal Malpractice
### (against Natbony and Katten)

58.   KATTEN re-alleges and incorporates its answers contained in paragraph 1–43 as if fully set forth herein.

59.   Denied.

60.   Denied.

61.   Denied.

### Count VI– Conspiracy
### (against Natbony and Kaplan)

62.   Inasmuch as the allegations contained in paragraphs 62 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

63.   Inasmuch as the allegations contained in paragraphs 63 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

64.   Inasmuch as the allegations contained in paragraphs 64 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

65.   Inasmuch as the allegations contained in paragraphs 65 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

7 of 12

{WP585655;1}

66.    Inasmuch as the allegations contained in paragraphs 66 are not directed to KATTEN, no response by KATTEN to said allegations is required; otherwise, denied.

67.    All other allegations contained in the Complaint not specifically responded to above are hereby denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff has failed to state any claim against KATTEN upon which relief can be granted and, therefore, Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V) asserted against KATTEN should be dismissed.

### Second Affirmative Defense

Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V), asserted against KATTEN are barred in whole or in part by the doctrine of waiver and, therefore, said counts should be dismissed.

### Third Affirmative Defense

Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V), asserted against KATTEN are barred in whole or in part by the doctrine of estoppel and, therefore, said counts should be dismissed.

### Fourth Affirmative Defense

Plaintiff is not entitled to recover damages under any alleged facts or theories as set forth in the Complaint because any damages Plaintiff allegedly suffered were not proximately caused by KATTEN and therefore, Plaintiff's counts for constructive fraud (Count III), breach of

{WP585655;1}

fiduciary duty (Count IV), and legal malpractice (Count V), asserted against KATTEN should be dismissed.

### Fifth Affirmative Defense

Plaintiff's entitlement to damages are barred by the doctrine of accord and satisfaction.

### Sixth Affirmative Defense

Plaintiff received full disclosure of the circumstances, nature and effect of the transactions alleged in the Complaint for which the Plaintiff claims he was damaged and, therefore, Plaintiff's purported count for breach of fiduciary duty (Count IV) fails and should be dismissed.

### Seventh Affirmative Defense

Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V) asserted against KATTEN did not accrue within the time prescribed by law for them prior to Plaintiff bringing this action and, therefore, said counts are barred by the Statute of Limitations and should be dismissed.

### Eighth Affirmative Defense

Any damages Plaintiff sustained were caused, in whole or in part, by Plaintiff's own actions, including, but not limited to, negligence and, therefore, Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V) asserted against KATTEN should be dismissed.

### Ninth Affirmative Defense

Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V), asserted against KATTEN are barred or limited in

9 of 12

{WP585655;1}

whole or in part because said counts are dependent upon the merits of Plaintiff's claims against Defendant Natbony and Defendant Kaplan, which in turn are barred or limited in whole or in part by Defendant Natbony and Defendant Kaplan's defenses.

### Tenth Affirmative Defense

Plaintiff is estopped and has waived the right to his purported count for legal malpractice (Count V) because said count arose more than two (2) years before the commencement of this action. Plaintiff did not complain of those acts alleged in the Complaint and KATTEN was not advised of Plaintiff's intention to assert any rights until the filing of this action, and KATTEN has relied on the delay of Plaintiff and will be injured if relief is granted. As such, Plaintiff's purported count for legal malpractice (Count V) asserted against KATTEN should be dismissed.

### Eleventh Affirmative Defense

Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V) asserted against KATTEN are barred or limited in whole or in part because Plaintiff has failed to take action to mitigate his damages.

### Twelfth Affirmative Defense

The damages sought by the Plaintiff were caused in whole or in part by the acts and omissions of persons and entities not currently parties to this action, such as, without limitation, those attorneys Plaintiff retained and who provided legal representation to the transactions Plaintiff claims he suffered damages and that are the subject of Plaintiff's purported counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V). This intervening cause precludes recovery from KATTEN and, therefore, said counts should be dismissed.

{WP585655;1}

### Thirteenth Affirmative Defense

Plaintiff's purported counts constructive fraud (Count III) fails to state a cause of action in that Plaintiff has failed to set forth all averments of fraud with particularity in violation of Rule 1.120(b) of the Florida Rules of Civil Procedure and, therefore, said counts should be dismissed.

### Fourteenth Affirmative Defense

Plaintiff's counts for constructive fraud (Count III), breach of fiduciary duty (Count IV), and legal malpractice (Count V) asserted against KATTEN are barred or limited in whole or in part by virtue of Plaintiff's own misconduct and unclean hands.

### Fifteenth Affirmative Defense

Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.

### Sixteenth Affirmative Defense

Plaintiff failed to exercise reasonable care in connection with the matters alleged in the Complaint for legal malpractice (Count V) such that Plaintiff's contributory negligence proximately caused his alleged damages, barring any recovery from KATTEN and, therefore, said count should be dismissed.

*KATTEN reserves the right to amend this Answer and Affirmative Defenses to assert such other and further defenses as are revealed during the course of discovery and the litigation.*

WHEREFORE, KATTEN prays that Counts III to V of the Complaint be dismissed with prejudice, a judgment be entered in KATTEN's favor and against Plaintiff, and for such other and further relief as the Court deems just and proper.

{WP585655;1}

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the forgoing was served by facsimile and U.S. Mail on this $\underline{7}$ day of May, 2009 to: **Glenn E. Goldstein, Esq./Jerold I. Budney, Esq.**, Greenberg Traurig, P.A., 401 East Las Olas Boulevard, Suite 2000, Ft. Lauderdale, FL  33301, **Thomas J. Wiegand, Esq./Gregory J. Miarecki, Esq.**, 35 West Wacker Drive, Chicago, IL 60601, and **Harley S. Tropin, Esq.**, Kozyak Tropin & Throckmorton, 2525 Ponce de Leon Blvd., 9th Floor, Miami, Fl. 33134.

David I. Spector, Esquire
Florida Bar No. 086540
david.spector@akerman.com
Venus A. Caruso, Esquire
Florida Bar No. 790001
venus.caruso@akerman.com
AKERMAN SENTERFITT
Esperante Building – 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, FL  33401
Telephone: (561) 653-5000
Fax:        (561) 659-6313

{WP585655;1}

12 of 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION


GUMA AGUIAR,

        Plaintiff,

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN, LLP, an Illinois limited
liability partnership,

        Defendants.

_____/

CASE NO._____ - CIV-_____/_____


## DEFENDANTS', WILLIAM NATBONY AND THOMAS KAPLAN, CONSENT AND JOINDER TO REMOVAL

        Defendants, William Natbony ("Natbony") and Thomas Kaplan ("Kaplan"), by and through their undersigned counsel, herewith consent to and join in the removal of this action by Defendant, Katten Muchin Rosenmann, LLP ("Katten") ("Consent"), and state:

        1.    Natbony and Kaplan join in the removal for the reasons set forth in Katten's Notice of Removal filed concurrently herewith.

        2.    At the time the Complaint was filed, Natbony and Kaplan were, and still are, residents of New York. See Complaint at ¶¶ 2- 3 attached as Exhibit "1" to Composite Exhibit "A" attached to Defendant Katten's Notice of Removal.

{WP586400:1}

**EXHIBIT**
B
tabbies

3.     This Consent is made without waiver of any defense available to Natbony and/or

Kaplan in these proceedings.

Dated this 8th of May, 2009.

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone:     (305) 372-1800
Facsimile:     (305) 372-3508

By: _____
       Harley S. Tropin, Esq.
       Fla. Bar No.: 241253
       Thomas A. Tucker Ronzetti, Esq.
       Fla. Bar No.: 965723

*Attorney for Defendants William Natbony and
Thomas Kaplan*

{WP586400;1}                    2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

GUMA AGUIAR,

          Plaintiff,

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN, LLP, an Illinois limited
liability partnership,

          Defendants.

_____/

CASE NO._____ - CIV-_____/_____

## AFFIDAVIT OF TED S. HELWIG, ESQ.

STATE OF ILLINOIS        )
                        ) ss:
COUNTY OF COOK        )

      BEFORE ME, the undersigned authority, personally appeared Ted S. Helwig, Esq., who deposes and says:

      1.      My name is Ted S. Helwig. I am over the age of 21, am competent to make this Affidavit, and all statements made herein are based upon my personal knowledge.

      2.      I am a partner at Katten Muchin Rosenmann, LLP ("Katten") which is a named Defendant in the above-styled case. I have held this position at all times material to this Affidavit. In this capacity, I have personal knowledge of the partnership structure of Katten and to the extent that I am informed, knowledge of Katten's business affairs.

      2.      This Affidavit is being provided in support of Katten's Notice of Removal being filed in this lawsuit. I am authorized to execute this Affidavit in this matter.

{WP586410;1}

1 of 2



3.  I have read the Complaint filed on March 26, 2009 by Guma Aguiar in the above-captioned action.  I understand that I am providing this Affidavit to supply certain factual information in support of Katten's Notice of Removal being filed in this lawsuit.

4.  Katten is an Illinois limited liability partnership with its principal place of business in Illinois.  Katten does not maintain an office in Florida.

5.  Katten has partners who are citizens of the United States and residents of California, Connecticut, District Columbia, Illinois, Indiana, Maryland, New Jersey, New York, North Carolina, Virginia, and Texas.

6.  Katten also has partners who are citizens of, and reside in, the United Kingdom.  These United Kingdom based partners are not residents of any state in the United States.

7.  Katten does not have any partner that is a citizen of the State of Florida.

8.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NAUGHT.

Ted S. Helwig, Esq.
Katten Muchin Rosenman, LLP

Sworn to and subscribed before me this
_8th_ day of May, 2009.

NOTARY PUBLIC, State of _ILLINOIS_
My Commission Expires: _6/16/2009_

"OFFICIAL SEAL"
Irene E. Lyewski
Notary Public, State of Illinois
My Commission Expires June 16, 2009

The individual Affiant identified above is either:
_✓_ Personally known to me, or
_____ Produced identification in the
form of _____

2 of 2

{WP586410;1}

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GUMA AGUIAR,

        Plaintiff,

v.

WILLIAM NATBONY, THOMAS
KAPLAN, and KATTEN MUCHIN
ROSENMAN, LLP, an Illinois limited
liability partnership,

        Defendants.

_____/

CASE NO.: 09017782 07
COMPLEX LITIGATION UNIT

## NOTICE OF FILING NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendant, Katten Muchin Rosenman, LLP ("Katten")

hereby gives notice of filing its Notice of Removal ("Notice of Removal") of this action to the

United States District Court for the Southern District of Florida, a copy of which is attached as

Exhibit "A."

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of May, 2009, the foregoing was served via

U.S. Mail to all counsel of record identified on the attached Service List.

David I. Spector, Esq.
Fla. Bar No. 086540
david.spector@akerman.com
Venus A. Caruso, Esq.
Fla. Bar No. 790001
venus.caruso@akerman.com
Esperante Building – 4th Floor
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401
Tele: (561) 653-5000
Fax: (561) 659-6313

*Attorneys for Defendant Katten Muchin
Rosenman, LLP*

{WP585416;1}

**EXHIBIT**

tabbies®

D

## SERVICE LIST

Glenn E. Goldstein, Esq.
Jerold I. Budney, Esq.
GREENBERG TRAURIG, P.A.
*Attorneys for Plaintiff*
401 East Las Olas Boulevard, Suite 2000
Ft. Lauderdale, FL  33301


Thomas J. Wiegand, Esq.
Gregory J. Miarecki, Esq.
WINSTON & STRAWN, LLP
*Attorneys for Plaintiff (to be admitted pro hac vice)*
35 West Wacker Drive
Chicago, IL 60601-9703


Harley S. Tropin, Esq.
Thomas A. Tucker Ronzetti, Esq.
KOZYAK TROPIN & THROCKMORTON, P.A.
*Attorneys for William Natbony and Thomas Kaplan*
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134


David I. Spector, Esq.
Venus A. Caruso, Esq.
AKERMAN SENTERFITT
*Attorneys for Katten Muchin Rosenmann, LLP*
Esperante Building, Fourth Floor
222 Lakeview Ave., Suite 400
West Palm Beach, FL 33401

**JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**May 8, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS
GUMA AGUIAR

## DEFENDANTS
KATTEN MUCHIN ROSENMAN, LLP, et al.

**(b)** County of Residence of First Listed Plaintiff  **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Nassau**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Glenn E. Goldstein, Esq., Greenberg Traurig, 401 East Las Olas Boulevard, Suite 2000, Ft. Lauderdale, FL, 33301 (954) 765-0500

Attorneys (If Known)
David I. Spector, Akerman Senterfitt, 222 Lakeview Ave, 4th Floor, West Palm Beach, Fl 33401

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

09CV60683 ATONAGA/BROWN

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☑ YES ☐ NO
JUDGE Seitz
DOCKET NUMBER 0:09CV60136PAS

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 (a)(3) Plaintiff seeks damages under various common theories in connection with proceeds of an asset sale in the amount of $2.55 billion
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ not specifically identified
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 5/8/09

FOR OFFICE USE ONLY
AMOUNT 350.00   RECEIPT # 725822   IFP