## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LEOR EXPLORATION &
PRODUCTION LLC, *et al.,*          **CASE NO. 09-60136-CIV-SEITZ/O'SULLIVAN**

      Plaintiffs,

v.

GUMA AGUIAR,

      Defendant.

---

GUMA AGUIAR,          **CASE NO. 09-60683-CIV-SEITZ/O'SULLIVAN**

      Plaintiff,

v.

WILLIAM NATBONY, et al.,

      Defendants.

---

### REPLY TO LEOR PLAINTIFFS' MEMORANDUM IN RESPONSE TO AGUIAR'S BRIEF CONCERNING THE RELEVANCE OF MENTAL CONDITION TO THE COURT'S RESOLUTION OF PENDING MOTION FOR SANCTIONS

In Leor Plaintiffs' Memorandum In Response To Aguiar's Brief Concerning The Relevance Of Mental Condition To The Court's Resolution Of Pending Motion For Sanctions (the "Response") (D.E. #292 in Case No. 09-60136 and D.E. #181 in Case No. 09-60683), the Leor Plaintiffs urge several critical legal errors. First, they wrongly read Eleventh Circuit law to require use of an objective standard in determining the propriety of sanctions in this case. Second, they mischaracterize the sanctions they seek as compensatory and not punitive. Third, using selected medical records out of context and unsupported assumptions, they conclude that Aguiar was, in fact, not mentally ill at the time the alleged hacking occurred. Fourth, and finally, the Leor Plaintiffs argue that Aguiar somehow waived his right to present evidence of his mental

condition to this Court, despite the facts that: 1) Aguiar specifically reserved this right in open court; and 2) this new evidence is highly relevant to issues in this case and responsive to Leor Plaintiffs' own motion to reopen the evidence in this proceeding.[1]

## I.   BAD FAITH IS A SUBJECTIVE STANDARD.

The parties do not disagree that this Court must determine whether "bad faith" exists in this case. The Leor Plaintiffs wrongly contend that this Court should use a purely objective standard in making this determination. The Eleventh Circuit has made clear that this term "'implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1999)). This is plainly a subjective standard – its multiple references to a culpable and personal state of mind ("conscious" wrongdoing; "dishonest purpose," "moral obliquity," "state of mind operating with furtive design or ill will") can refer only to an individual's subjective state of mind.

Additional authority from this circuit supports this reading of *Gilbert*. For example, in *In re Baron's Stores, Inc.*, No. 97-25645-BKC-PGH, 2007 WL 1120296, at *8 (Bankr. S.D. Fla. Apr. 12, 2007), the court analyzed whether several attorneys had committed fraud upon the court. It explicitly rejected the argument that "the [c]ourt should determine the [a]ttorneys'

---

[1] To make matters worse, the Leor Plaintiffs referenced the diagnosis of Aguiar's condition (Resp. 3) and to the content of medical reports on his mental health (Resp. 5) *in a public filing*. *See* 02/10/10 Tr. 40:2-7; Leor DE #85 Ex. 1; Leor DE #292. This information was obtained from Aguiar's counsel on an "attorneys' eyes only basis" under the terms of the existing Protective Order. Leor Plaintiffs were clearly aware of the Protective Order's terms, as evidenced by their attempt to reduce the level of confidentiality associated with these records. This is a transparent attempt to circumvent this Court's authority, and to improperly place details concerning Aguiar's mental condition in the public record. Aguiar does not address this violation in detail herein, but will raise the issue with the Court at an appropriate time.

Greenberg Traurig, P.A. ■ Attorneys at Law ■ 401 East Las Olas Boulevard ■ Suite 2000 ■ Fort Lauderdale, FL 33301 ■ Tel 954.765.0500 ■ Fax 954.765.1477 ■ www.gtlaw.com

intent objectively" and stated "[t]he [c]ourt finds that setting in motion an unconscionable scheme to interfere with the [c]ourt's ability to impartially adjudicate a matter requires subjective intent." *Id.* The Eleventh Circuit, in upholding the decision, stated "[o]ur law requires the demonstration of a plan or scheme designed to improperly influence the court, which indicates that scienter is required." *In re Baron's Stores, Inc.*, No. 08-11286, 307 Fed. Appx. 396, 397-38 (11th Cir. Jan. 15, 2009). *See also Seismograph Serv. Corp. v. Offshore Raydist, Inc.*, 263 F.2d 5, 23 (5th Cir. 1958) (upholding lower court's refusal to find a fraud upon the court absent evidence of intent); *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1312-13 (S.D. Fla. 2000) (finding that attorneys had committed fraud upon the court only after finding that they had "scienter and fraudulent intent" after analyzing their "intent, willfulness, and motive.").

Authority from other circuits confirms that a subjective bad faith analysis is appropriate in this case. In *Roby v. The Ctr. Cos.*, No. 88-1019, 1989 WL 107127 (6th Cir. Sept. 19, 1989), a plaintiff refused to complete his deposition due to his "paranoia and other mental problems, as well as his medication." *Id.* at *5. Among the evidence of his paranoia was his belief that his phone was bugged, that "the defendant had 'harassed' him by sending a woman in a low-cut dress to his house to ask for directions," and that people were peeking through his windows. *Id.* The Sixth Circuit reversed the district court's decision to dismiss the case, finding that, in light of the plaintiff's mental condition, the plaintiff's failure to complete his deposition was not "a garden-variety bad-faith refusal to disclose information on discovery." *Id.*

Given this weight of authority, it is clear that the Court must examine the question of bad faith subjectively. While the court may look at objective conduct (such as e-mails purportedly sent by Aguiar himself and Aguiar's own testimony during the evidentiary hearing) as evidence concerning his state of mind to determine whether Aguiar was acting in bad faith, the inquiry

3

into the ultimate question of bad faith is a *subjective* one.  What is more, it is apparent from the case law that courts, in looking at the question of bad faith, use a sliding scale type of approach. When serious sanctions are a possibility, the court looks even more carefully to find evidence of *subjective* bad faith.  Only the most compelling evidence of unequivocally subjective bad faith could possibly allow a court to impose the most extreme of sanctions -- a death penalty punitive sanction involving more than a $1 billion windfall to the Leor Plaintiffs.

In the face of this authority, the Leor Plaintiffs invite the Court to depart from these settled principles, and determine whether Aguiar acted in bad faith by looking at actions only objectively, and ignoring subjective intent.  Their cited authority does not support their proposed change in the law.  Neither *Eagle Hospital Physicians, LLC v. SRG Consulting*, No. 1:04-CV-1015-JOF, 2007 WL 2479290 (N.D. Ga. Aug. 28, 2007) nor *Travelers Indemnity Co v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985) contain any direction concerning whether bad faith is an objective or subjective question.  Nor do they – as the Leor Plaintiffs suggest (Resp. 3) – state that *mens rea* is irrelevant to the bad faith analysis.

Leor Plaintiffs also cite to *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) and *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002).  Neither case holds that courts must use an objective, as opposed to a subjective, standard.  Indeed, to the contrary, *Thomas* expressly holds that courts imposing sanctions must "comply with the mandates of due process," which include "an opportunity to respond, orally or in writing, to the invocation of such sanctions and to *justify his actions*." *Id.* at 1321.  This language makes clear that the potentially sanctioned party's state of mind is relevant to whether sanctions should issue – an inquiry clearly calling for examination of subjective intent.

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

Leor Plaintiffs' citation to *Ocon v. Equinamics Corp.*, No. 08-11226, 2009 WL 405370, at *1 (11th Cir. Feb. 19, 2009) (Resp. at 4-5) is also unavailing. The language cited is a quotation from *Amlong & Amlong, P.A. v. Denny's Inc.*, 457 F.3d 1180, 1190 (2006) (superseded by *Amlong*, 500 F.3d 1230 (11th Cir. 2007)). In *Amlong*, the Eleventh Circuit *reversed* a district court sanction order, holding that the lower court had abused its discretion in imposing sanctions on plaintiff's attorneys under Section 1927. In so ruling, the *Amlong* court recognized that the question of sanctions was governed by statutory mandate, and acknowledged that "bad faith" has other meanings in other contexts. *Amlong*, 500 F.3d at 1239.[2] *See also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1508 (11th Cir. 1993) (addressing the propriety of sanctions under Federal Rule of Civil Procedure 11) (cited in Resp. at 5).

## II.   SANCTIONS OF THE TYPE SOUGHT BY THE LEOR PLAINTIFFS ARE PUNITIVE.

As explained in Aguiar's initial papers, the Leor Plaintiffs are effectively seeking punitive damages. Br. 4-5. Mentally impaired tortfeasors are not liable for punitive damages; because such persons are incapable of comprehending the reality of their actions and the consequences of their actions, the deterrent effect of punitive damages is lost. *Id.* The Leor Plaintiffs do not seriously dispute this proposition. Rather, they argue that they relief they seek is not punitive, but rather damages stemming from "civil liability for intentional torts." Resp. 7. Not true. The Leor Plaintiffs are not seeking the sort of compensatory relief granted against "insane or incompetent" civil litigants, but the extreme remedy of dismissal. Both the district court and the Eleventh Circuit in *Eagle Hospital* made abundantly clear that punishment was the primary purpose of this remedy. As the Eleventh Circuit explained:

---

[2]   Aguiar discussed this point in his opening brief (Br. at 4). The Leor Plaintiffs have failed to effectively respond to this point in their Response.

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

The court felt that a severe sanction *was necessary to act as a deterrent* to other litigants contemplating improper interception of communications between clients and their attorneys because permitting this case to continue would be an open invitation to others to abuse the judicial process. The court reasonably concluded that Gerst's egregious misconduct disrupted the litigation, his ongoing ability to intercept confidential and privileged emails would make it untenable for Eagle to continue litigating against Gerst and his closely-held corporations, and that *extreme sanctions were necessary to punish Appellants and deter others.*

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306-07 (11th Cir. 2009) (citations omitted) (emphasis added). This Court recognized that *Eagle Hospital* found the deterrent effect of the sanction of primary importance, stating "[g]oing back to the *Eagle Hospital* case, the [c]ourt – there it says the [c]ourt felt a severe sanction was necessary to act as a deterrent to other litigants." 12/09/09 Tr. 120:23-25.

This formulation of the purpose behind the sanction of dismissal is precisely analogous to the purpose behind awards of punitive damages: "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 n. 9 (1986) (citations omitted); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981) ("[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct") (citations omitted). In contrast, compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (citations omitted).

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

The Leor Plaintiffs have not alleged a shred of actual "concrete loss" stemming from the alleged hacking. Nevertheless, they are asking this Court to throw out a billion dollar lawsuit and insulate themselves from liability for their egregious display of fraud and legal malpractice. If this Court accepts that invitation and levies that sanction against Aguiar, such a sanction would clearly be punitive. Because punitive damages are not available against the mentally impaired, evidence concerning Aguiar's mental state is critical in determining whether any sanctions are appropriate. And as Aguiar noted in his proposed findings (¶ 46), the fact that sizable sums of money are in dispute separately makes the imposition of the punitive sanction sought by the Leor Plaintiffs – outright dismissal -- particularly disproportionate and unconstitutional. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003) (citing generally *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996)).

## III. THE LEOR PLAINTIFFS SHADOWBOX WITH EVIDENCE OF MENTAL ILLNESS BEFORE IT IS FULLY PRESENTED TO THE COURT.

Despite arguing that Aguiar should not be permitted to present evidence of his mental condition to this Court (*see* Resp. 11), the Leor Plaintiffs argue the merits of Aguiar's mental state in their response. They argue that mental illness "that is in any part due to a defendant's voluntary intoxication is not beyond his control." Resp. 5. But Leor Plaintiffs *have cited no evidence* that Aguiar was under the influence of any drug at the times the alleged hacking occurred. An evidentiary hearing is the time and the place to present such evidence. If the Leor Plaintiffs have any evidence to support their claim, they should present it during such a hearing.

Further, even if such evidence existed, it would not have the import Leor Plaintiffs ascribe to it. Intoxication can be a valid defense. In the event drug use was caused by Aguiar's mental illness, that fact can be an affirmative defense. *See* Model Penal Code § 2.08(4) (2001) ("[i]ntoxication that... is pathological is an affirmative defense if by reason of such intoxication

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

the actor at the time of his conduct lacks substantial capacity either to appreciate its criminality [wrongfulness] or to conform his conduct to the requirements of law"); *see also Powell v. State of Texas*, 392 U.S. 514 (1968) (reversing conviction for drunkenness where drunken state was due to chronic alcoholism); *State v. Bauman*, 689 A.2d 173, 194 (N.J. App. 1997) ("Involuntary intoxication is intoxication that is... pathological. Involuntary intoxication is a complete defense if the level of intoxication is so high that the defendant is not aware of the nature and quality of his acts or is not aware that those acts are wrong.") (citations omitted); *State v. Matthews*, 532 P.2d 250 (Or. App. 1975) (defendant's "organic brain disease" which cause defendant to consume excessive amounts of alcohol found sufficient to support an involuntary intoxication defense). Further, even where intoxication is voluntary, such is a defense if "it negatives an element of the offense." Model Penal Code § 2.08(1); *see also Gardner v. State*, 480 So.2d 91 (Fla. 1985) (voluntary intoxication held to be a defense to specific intent crimes of first degree murder and robbery) (citation omitted).

## IV.    THE LEOR PLAINTIFFS' WAIVER ARGUMENT FAILS.

The Leor Plaintiffs incorrectly argue that Aguiar has "waived" any right to present evidence concerning his past and present psychiatric condition. Resp. 10. As an initial matter, Aguiar's counsel specifically preserved this right in open court:

> Mr. Dershowitz: But if there is going – we want to reserve the right, at least, if there's going to be any kind of sanction hearing, to be able to introduce evidence about state of mind from a psychiatric witness.
>
> The Court: Okay. You can reserve that right...
>
> Mr. Dershowitz: We also want to argue the issue as it relates to bad faith.
>
> The Court: I understand. I understand.

12/04/09 Tr. 160:25-161:4, 8-10.

Greenberg Traurig, P.A. ■ Attorneys at Law ■ 401 East Las Olas Boulevard ■ Suite 2000 ■ Fort Lauderdale, FL 33301 ■ Tel 954.765.0500 ■ Fax 954.765.1477 ■ www.gtlaw.com

Moreover, even if Aguiar's counsel had not preserved this issue as set forth above, it would nevertheless be appropriate to reopen the record to introduce evidence concerning Aguiar's mental condition. Events subsequent to the close of evidence on December 4 have made the extent and scope of Aguiar's mental illness, and the effect of that illness on him at the times in question, clear to Aguiar's counsel.[3] Leor Plaintiffs' position rings especially hollow in light of *their own request to reopen the record* to present additional evidence of Aguiar's alleged hacking. At a minimum, evidence concerning Aguiar's mental condition is relevant to place Leor Plaintiffs' additional evidence into context. Refusing to permit Aguiar an opportunity to present this new and highly relevant evidence would constitute reversible error. *E.g., Minakan v. Husted*, __ So. 3d __, 2010 WL 174333, at *3 (4th DCA Jan. 20, 2010) (reversing and remanding an alleged "hacking" case to allow a party to present evidence demonstrating that allegedly privileged material was not confidential).

## CONCLUSION

For the reasons set forth above, this Court should apply a subjective standard in assessing whether Aguiar acted in bad faith.

---

[3]      Leor Plaintiffs complain that Aguiar has not made a "formal motion" (Resp. at 1) to reopen the evidentiary record. Aguiar's initial brief was submitted in response to the Court's invitation to submit evidence on the applicable standard for analysis of bad faith. Aguiar will make this motion at the appropriate time – after Aguiar is able to consult with his counsel in a meaningful way and able to receive and comprehend legal advice.

Greenberg Traurig, P.A. ▪ Attorneys at Law ▪ 401 East Las Olas Boulevard ▪ Suite 2000 ▪ Fort Lauderdale, FL 33301 ▪ Tel 954.765.0500 ▪ Fax 954.765.1477 ▪ www.gtlaw.com

WINSTON & STRAWN, LLP
Attorneys for Guma Aguiar
35 West Wacker Drive
Chicago, Illinois  60601-9703
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

*s/ Thomas J. Wiegand*
THOMAS J. WIEGAND
twiegand@winston.com
GREGORY J. MIARECKI
gmiareck@winston.com
(admitted *pro hac vice*)

GREENBERG TRAURIG, P.A.
Attorneys for Guma Aguiar
GLENN E. GOLDSTEIN
Florida Bar Nol. 435260
goldsteing@gtlaw.com
JEROLD I. BUDNEY
Florida Bar No. 283444
budneyj@gtlaw.com
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
Telephone:  (954) 768-8245
Facsimile:  (954) 765-1477


Alan M. Dershowitz
26 Reservoir Street
Cambridge, Massachusetts  02138
Telephone:  617-661-1965
dersh@law.harvard.edu
(admitted *pro hac vice*)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF notification on February 22, 2010.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.


*s/ Glenn E. Goldstein*
GLENN E. GOLDSTEIN

Greenberg Traurig, P.A. ■ Attorneys at Law ■ 401 East Las Olas Boulevard ■ Suite 2000 ■ Fort Lauderdale, FL 33301 ■ Tel 954.765.0500 ■ Fax 954.765.1477 ■ www.gtlaw.com

## SERVICE LIST

Harley S. Tropin, Esq.
hst@kttlaw.com
Thomas A. Tucker Ronzetti, Esq.
tr@kttlaw.com
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Boulevard
9th Floor
Miami, Florida  33131-2335
Telephone:  305.372.1800
Facsimile:  305.372.3508
*Attorneys for Leor Exploration &
Production, LLC, Pardus Petroleum
L.P., Pardus Petroleum LLC, William
Natbony and Thomas Kaplan*

Stephen M. Rathkopf, Esq.
srathkopf@herrick.com
Marisa A. Leto, Esq.
mleto@herrick.com
Herrick, Feinstein, LLP
2 Park Avenue
New York, NY  10016
Telephone:  212-592-1400
(admitted *pro hac vice*)
*Attorneys for William Natbony and
Thomas Kaplan*

David I. Spector, Esq.
david.spector@akerman.com
Venus A. Caruso, Esq.
venus.caruso@akerman.com
Akerman Senterfitt
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida  33401
Telephone:  561.653.5000
Facsimile:  561.659.6313
*Attorneys for Katten Muchin Rosenman,
LLP*

Brian J. Stack, Esq.
bstack@stackfernandez.com
Stack Fernandez Anderson & Harris, P.A.
1200 Brickell Avenue, Suite 950
Miami, FL 33131
Telephone:  305-371-0001
Facsimile:  305-371-0002
*Attorneys for William Natbony*

Jonathan Rubenstein, Esq.
jonathan.rubenstein@bakerbotts.com
Baker Botts LO.L.P.
Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Telephone:  214-953-6609
(admitted *pro hac vice*)
*Attorneys for Leor Plaintiffs*

Kendall Coffey, Esq.
kcoffey@coffeyburlington.com
Coffey Burlington
Office in the Grove
2699 S. Bayshore Drive, PH
Miami, FL 33133
Telephone:  305-858-2900
Facsimile:  305-858-5261
*Special Counsel for Guma Aguiar*

*FTL 107,598,339v1 2-22-10*

Greenberg Traurig, P.A. ■ Attorneys at Law ■ 401 East Las Olas Boulevard ■ Suite 2000 ■ Fort Lauderdale, FL 33301 ■ Tel 954.765.0500 ■ Fax 954.765.1477 ■ www.gtlaw.com