UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LEOR EXPLORATION &
PRODUCTION LLC, *et al.*,                         CASE NO. 09-60136-CIV-SEITZ/O'SULLIVAN

    Plaintiffs,

v.

GUMA AGUIAR,

    Defendant.
_____

GUMA AGUIAR,                         CASE NO. 09-60683-CIV-SEITZ/O'SULLIVAN

    Plaintiff,

v.

WILLIAM NATBONY, et al.,

    Defendants.
_____

**AGUIAR'S RESPONSE IN OPPOSITION TO LEOR PLAINTIFFS' BRIEF REGARDING PUBLIC ACCESS TO PROCEEDINGS AND HEARING TRANSCRIPTS**

Leor Plaintiffs' Brief Regarding Public Access To Proceedings And Hearing Transcripts [D.E. 300 in Case No. 09-60136] is the latest in a series of efforts to fully and completely destroy Guma Aguiar. Moving Parties[1] ask this Court to provide "unfettered access by the parties and the public to all future proceedings and transcripts." (Br. 7). No legitimate motive exists for their request, given that they already enjoy such access and lack standing to request such relief. Moreover, even if Moving Parties did have standing, they fundamentally ignore Aguiar' compelling interests in keeping certain medical information private and misstate the applicable law as to the sealing of these proceedings. Contrary to Moving Parties' claims, certain aspects of

---

[1] The "Moving Parties" are Leor Exploration & Production LLC, William Natbony, Thomas Kaplan, Pardus LP, Pardus LLC, and Katten Muchin Rosenman LLP.

1

these proceedings should be sealed, and Aguiar has not waived his right to request such treatment. Moving Parties' request is nothing more than a transparent attempt to embarrass Aguiar, and it should be denied.

## FACTUAL BACKGROUND

On January 20, 2010, attorneys for Aguiar made representations to the Court about Aguiar's mental health which contained information that is not available to the public. (01/20/10 Tr. 25:21-25). The Court correctly held, in light of the sensitivity of mental health information, that the transcript of this proceeding would be available to the parties but would not be available "for third-party transcription… absent further order from [the] Court." (Leor DE #271).

On February 10, 2010, the Court held a second hearing in which the contents of mental health records (02/10/10 Tr. 42:2-15) were discussed extensively by counsel for both the Leor Plaintiffs and for Aguiar. The Court held that the transcript of this proceeding would also be available to the parties but would not be available "for third-party transcription… absent further order from [the] Court." (Leor DE #294).

## ARGUMENT

**I.   MOVING PARTIES LACK STANDING TO BRING THE INSTANT MOTION.**

The Court has already given Moving Parties "unfettered access" to all future proceedings and transcripts. Moving Parties complain that *the public* does not enjoy the same access. As a threshold matter, Moving Parties bear the burden of establishing the standing necessary to raise such a claim. *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998); *Reynolds v. Butts*, 312 F.3d 1247, 1250 (11th Cir. 2002). To carry this burden, they must establish that: 1) they suffered actual injury or show the imminence of such injury – abstract harm is insufficient; 2) the injury must be

fairly traceable to the alleged unlawful conduct; and 3) the requested relief likely will redress the injury. *In re Cummings*, 381 B.R. 810, 830-34 (S.D. Fla. 2007).

Moving Parties have completely failed to establish that they have been "deprived of something to which they *personally* are entitled," *Raines v. Byrd*, 521 U.S. 811, 821 (1997) (emphasis in original). They cannot satisfy the standing requirement by asserting the rights of third parties. *See Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4-5 (1st Cir. 1985) (denying party standing to assert the rights of nonparty witnesses and stating "a party ordinarily may not assert the legal rights of others") (citing *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)) (additional citations omitted). Under such circumstances, Moving Parties cannot establish standing and their motion should be denied for that reason alone. *See American Historical Ass'n v. National Archives and Records Admin.*, 310 F. Supp. 2d 216, 227-229 (D.D.C. 2004) (denying injunction requiring release of records because the moving parties had already been granted access to those records).

## II. THE COURT SHOULD SEAL PROCEEDINGS CONCERNING AGUIAR'S MEDICAL TREATMENT.

Even if Moving Parties could somehow overcome their standing deficiency, the Court should still deny their Motion. This is true for several reasons:

*First*, Moving Parties' motion is based on the inaccurate premise that Aguiar seeks a complete seal of all "transcripts and proceedings." (Mot. 2). This has never been Aguiar's position. To the contrary, Aguiar requests only that the Court maintain a seal on his psychiatric medical records and those portions of proceedings which discuss or describe those medical records and his diagnosis/treatment. To the extent future proceedings involve other issues, Aguiar does not oppose making them public, provided that other bases for sealing do not exist.

*Second*, Moving Parties give short shrift to the fact that Aguiar in fact has a compelling interest in keeping his psychiatric medical records and related proceedings from public view. It is well established that patients have a right to keep their medical information private. *See, e.g.*, *Langbehn v. Pub. Health Trust of Miami-Dade County*, 661 F. Supp. 2d 1326, 1336 (S.D. Fla. 2009) ("Much of a patient's medical information is private and confidential under both state and federal law"); *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 205-06 (Fla. 2007) ("Florida has a long tradition of recognizing the privacy interests of patients in confidential medical records."). Indeed, in 1996, Congress passed the Health Insurance Portability and Accountability Act ("HIPAA") to further the goal of protecting patients' medical privacy. Pub. L. No. 104-191.[2] The Florida Mental Health Act similarly protects a patient's mental health records from disclosure. *See* Fla. Stat. § 394.4615(1) ("Unless waived by express and informed consent…the confidential status of the clinical record shall not be lost by either authorized or unauthorized disclosure to any person, organization, or agency.").

Because mental health records are at issue, the interest in protecting them from public view is heightened. Mental records "contain highly sensitive and potentially embarrassing personal information about individuals." There is a "significant stigma associated with mental illness." *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (citing *Vitek v. Jones*, 445 U.S. 480, 492 (1980)); *see also O'Brien v. Chaparro*, No. 05-80342-CIV, 2005 WL 6011248, at *3 (S.D. Fla. Dec. 8, 2005) ("the remaining stigma in our society of mental illness makes admission of such evidence in this case to be substantially more prejudicial than probative").

---

[2] *See, e.g.*, Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82464 (Dec. 28, 2000) (Privacy Rule of HIPAA provides "a set of basic national privacy standards and fair information practices that provides all Americans with a basic level of protection and peace of mind that is essential to their full participation in their care."); Standards for Privacy of Individually Identifiable Health Information, 67 Fed. Reg. 53182 (Aug. 14, 2002) (HIPAA enacted due to Congress' recognition of "the importance of protecting the privacy of health information given the rapid evolution of health information systems").

Moreover, the privacy rights of the mentally ill require special protection because "'[t]he psychiatric patient confides more utterly than any one else in the world.'" *Nat'l Trans. Safety Bd. v. Hollywood Mem'l Hosp.*, 735 F. Supp. 423, 424 (S.D. Fla. 1990) (quoting *United States v. Smith*, 425 F. Supp. 1038, 1043-1044 (E.D.N.Y.1976)). Indeed, courts have found that, due to this stigma and the especially confidential nature of the psychotherapist-patient relationship, even the mere "disclosure of the fact of a therapist-client relationship… may be harmful or embarrassing to the client." *Vinson v. Humana, Inc.*, 190 F.R.D. 624, 627 (M.D. Fla. 1999). This risk is compounded when a person is committed due to mental illness. *See Vitek,* 445 U.S. at 492 ("commitment to a mental hospital 'can engender adverse social consequences to the individual' and that 'whether we label this phenomena 'stigma' or choose to call it something else... we recognize that it can occur and that it can have a very significant impact on the individual.'") (quoting *Addington v. Texas*, 441 U.S. 418, 425-26 (1979)).

The fact that Mr. Aguiar is currently suffering from his medical condition makes the case for sealing his medical records and associated proceedings even stronger. It is difficult enough to undergo medical treatment absent public scrutiny. Making more details regarding his condition available to the press will only increase media attention and make treatment and recovery even more difficult.[3]

Third, Moving Parties ignore that courts, consistent with the interests outlined above, have recognized that sealing mental health information is appropriate. *See Floyd v. Waiters*, 133 F.3d 786, 796 n. 22 (11th Cir. 1998), *vac'd* 525 U.S. 802 (1998), and *aff'd Floyd v. Waiters*, 171 F.3d 1264, 1265 (11th Cir. 1999) (upholding district court decision "ordering a psychiatric report

---

[3] Moving Parties provide no real explanation of any special interest the public has in disclosure of Aguiar's medical information. They cite *United States v. Bradley*, No. 405CR059, 2007 WL 1703232, at *4 (S.D. Ga. June 11, 2007) for a hypothetical scenario in which a multi-millionaire defendant in a criminal case might try to buy his freedom. The case at bar is not a criminal case, and in any event, it is the Moving Parties – not Aguiar – who have virtually unlimited resources and have used them to their advantage in this litigation.

and evaluation of [the defendant] to remain sealed"). *See also Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("The judge can seal the plaintiff's psychiatric records and limit their use in the trial (which is public) to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records"); *United States v. Strothers*, 77 F.3d 1389, 1393 (D.C. Cir. 1996) (upholding lower court's decision to seal mental health records); *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) (citing and quoting with approval precedent "acknowledging that it may have been appropriate for the district court to seal psychiatric records that though pertinent to the suit would have been 'highly embarrassing to the average person'."); *Doe v. Judicial Nominating Com'n for Fifteenth Judicial Circuit*, 906 F. Supp. 1534, 1538 (S.D. Fla. 1995) (pointing out that plaintiff filed an affidavit under seal "to protect plaintiff's privacy" since in the affidavit "plaintiff allege[d] facts which indicate[d] a history of suffering and/or having been treated for various mental, physical, and emotional conditions"); *United States v. Rothman*, No. 08-20895-CR, 2009 WL 249245, at *1 (S.D. Fla. Feb. 3, 2009) (pointing out that mental health reports regarding the defendant were filed under seal); *United States v. Barzaga-Valladares*, No. 07-20726-CR, 2008 WL 4279637, at *3 (S.D. Fla. Sept. 14, 2008) (same); *United States v. Jackson*, 863 F. Supp. 1462, 1464, 1470 (D. Kan. 1994) (denying request to unseal psychiatric records).

*Fourth*, Moving Parties apply the wrong standard to determining whether sealing of this limited nature is appropriate. They suggest Aguiar must demonstrate that sealing is "necessitated by a compelling governmental interest, and is narrowly tailored to that interest." (Mot. 5). In a sense, Moving Parties' misapplication of the law is a distinction without a difference. As set forth above, there is a compelling interest in sealing material as Aguiar proposes – to protect his

6

medical privacy, especially while he is currently suffering from his illness. And the proposed seal is narrowly tailored to achieve that goal. Aguiar easily meets this heightened standard.

Regardless, this standard is not applicable here. In arguing for a heightened standard, Moving Parties do not cite to cases involving discovery issues or preliminary hearings, which the case at bar involves. Rather, they cite cases relating to *criminal trials*, where the Supreme Court has made clear that such a standard is appropriate. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029 (11th Cir. 2005) (cited in Mot. 5). They also cite to *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983), which explicitly limited its holding to the right to attend civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement. *Wilson v. American Motors Co.*, 759 F.2d 1568, 1569 (11th Cir. 1985), also cited by Moving Parties (Mot. 1) dealt with a civil trial to which the court ordered "total closure" of the public records.

This is not such a case. This is a civil case currently in preliminary stages, with no trial date set, where discovery records are being exchanged and their contents discussed in open court. Moreover, there has been no proposal for "total closure" of public records. Here, the applicable standard is the "good cause" standard set forth in the Federal Rules. Fed. R. Civ. P. 26(c)(1) ("[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). *See also Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310-12 (11th Cir. 2001) (noting that "[t]he constitutional right of access has a more limited application in the civil context than it does in the criminal" and that "[w]here discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure."). *See also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("[t]he common law right

of access may be overcome by a showing of good cause, which requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential") (citation omitted); *In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1339 (D.C. Cir. 1985) (the right to access summary judgment and trial exhibits in civil cases "does not exceed… the traditional common law right") (Scalia, J.); *In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1366 (N.D. Ga. 2002) (for "documents filed in support of dispositive motions…, the Eleventh Circuit has declared that the good cause standard, rather than the compelling interest test, satisfies any First Amendment concerns") (citation omitted). Indeed, courts have applied the good cause standard when examining the sealing of psychiatric records. *See Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997) ("[r]ecords or parts of records are sometimes sealed for good reasons… [s]hould John Doe's psychiatric records contain material that would be highly embarrassing to the average person yet somehow pertinent to this suit and so an appropriate part of the judicial record, the judge could require that this material be placed under seal"); *Rossbach*, 128 F. Supp. 2d at 1353 (approving and quoting from *Doe* in denying motion to unseal discovery documents filed with the court, because "it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information").

### III. AGUIAR HAS NOT WAIVED HIS RIGHT TO KEEP DETAILS CONCERNING HIS MENTAL CONDITION UNDER SEAL.

Moving Parties wrongly argue that Aguiar has "waived" his right to keep information regarding his mental condition under seal by placing his mental condition at issue. (Mot. 5). Simply because a litigant's medical condition is at issue does not waive that litigant's privacy right. Indeed, as discussed above, courts regularly permit litigants to maintain some privacy as to mental health information even when it is at issue in the litigation. *See Oberweis Dairy*, 456

F.3d at 718 (noting that courts may seal the plaintiff's psychiatric records and limit their use in the trial (which is public) to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records).  As one leading commentator has explained:

> Litigants do not give up their privacy rights simply because they have walked, voluntarily or involuntarily, through the courthouse door… The rulemakers who crafted our broad discovery regime to promote the disposition of civil disputes on their merits never intended that rights of privacy or confidentiality be destroyed in the process… Therefore, it is consistent with the underlying goals of the Rules that the litigation system's sensitivity to privacy considerations be heightened, given today's unparalleled capacity to record, retrieve, and transfer data, as well as the range of decisions made about people on the basis on files, records, dossiers, and data banks.

ARTHUR R. MILLER, CONFIDENTIALITY, PROTECTIVE ORDERS, AND PUBLIC ACCESS TO THE COURTS, 105 HVLR 427, 465 (1991).[4]

Cases cited by Moving Parties do not contradict this principle.  In *Montin v. Gibson*, No. 4:09CV3102, 2009 WL 2486441, at *2 (D. Neb. Aug. 12, 2009) (cited at Mot. 5-6), the Court simply upheld the right *of a defendant* to use information about a plaintiff's mental health in a lawsuit when the plaintiff put his mental health at issue in the same lawsuit.  This case addresses the rights of litigants, not unrelated third parties.  *United States v. Bradley*, 2007 WL 1703232 (S.D. Ga. Jun. 11, 2007) (cited at Mot. 6) was a criminal case employing different standards.  In *Scannavino v. Fla. Dep't of Corrections*, 242 F.R.D. 662 (M.D. Fla. 2007) (cited at Br. 6), there is no indication that waiver was an issue.

In a further attempt to argue waiver of this point, Moving Parties cite to purported statements from Mr. Aguiar during his involuntary commitment in Israel.  In so doing, Moving

---

[4] Arthur R. Miller was Of Counsel to a number of the Moving Parties in *Guma Aguiar v. Pardus Petroleum, LP, et al.*, No. 08-12-18280CV (District Court of Robertson County, Texas).

Parties ignore the proposition that waiver of a right must be "knowing and voluntary." Assuming *arguendo* the accuracy of the news account, Moving Parties have made no showing that these statements constituted a knowing and voluntary waiver. Given that Mr. Aguiar was institutionalized during the time of this interview, their ability to do so is doubtful at best. *See Wilkins v. Bowersox*, 145 F.3d 1006, 1013-14 (8th Cir. 1998) (finding invalid a waiver of the right to counsel where the waiver was "the product of his mental illness and immaturity and not rational decision making"); *Aguilar v. State*, 751 P.2d 178, 179-80 (N.M. 1988) (holding the confession of a defendant diagnosed with paranoid schizophrenia and suffering from hallucinations did not voluntarily confess in spite of signing a waiver of his *Miranda* rights); *Commonwealth v. Cephas*, 522 A.2d 63; *State v. Dailey*, 351 S.E.2d 431, 433 (W. Va. 1986).

## CONCLUSION

For the reasons set forth above, this Court should deny Moving Parties' Motion.

WINSTON & STRAWN, LLP
Attorneys for Guma Aguiar
35 West Wacker Drive
Chicago, Illinois  60601-9703
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

*s/ Thomas J. Wiegand*_____
THOMAS J. WIEGAND
twiegand@winston.com
GREGORY J. MIARECKI
gmiareck@winston.com
(admitted *pro hac vice*)

GREENBERG TRAURIG, P.A.
Attorneys for Guma Aguiar
GLENN E. GOLDSTEIN
Florida Bar Nol. 435260
goldsteing@gtlaw.com
JEROLD I. BUDNEY
Florida Bar No. 283444
budneyj@gtlaw.com
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida  33301
Telephone:  (954) 768-8245
Facsimile:  (954) 765-1477

Alan M. Dershowitz
26 Reservoir Street
Cambridge, Massachusetts  02138
Telephone:  617-661-1965
dersh@law.harvard.edu

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF notification on March 8, 2010. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                      s/ *Glenn E. Goldstein*
                                                      GLENN E. GOLDSTEIN

*FTL107,617,203v1 104057.010802*