UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LEOR EXPLORATION & PRODUCTION
LLC, et al.,

    Plaintiffs,

vs.                                                       CASE NO. 09-60136-CIV-SEITZ/O'SULLIVAN

GUMA AGUIAR,

    Defendant.
_____/

GUMA AGUIAR,

    Plaintiff,

vs.                                                       CASE NO. 09-60683-CIV-SEITZ/O'SULLIVAN

WILLIAM NATBONY, et al.,

    Defendants.
_____/

### LEOR PLAINTIFFS' REPLY BRIEF REGARDING PUBLIC ACCESS TO PROCEEDINGS AND HEARING TRANSCRIPTS

    According to Aguiar's opposition brief, he "requests only that the Court maintain a seal on his psychiatric medical records and *those portions of proceedings* which discuss or describe those medical records and his diagnosis/treatment." (Aguiar Opp. Br., at 3) (emphasis added). The problem is that Aguiar has repeatedly refused to identify what *specific portions* of these proceedings (if any) he believes warrant the extraordinary protection of a seal. As a result, the Leor Plaintiffs (and the Court) are left to guess which particular portions of the hearings and

transcripts Aguiar seeks to seal,[1] which improperly shifts Aguiar's burden to narrowly tailor his request for a seal to the Leor Plaintiffs. This process violates well-settled law.

As discussed in the Leor Plaintiffs' opening brief, "[t]he party seeking seal of a judicial record bears a heavy burden of justifying such a seal." Solis v. Koresko, 2009 WL 911131, at *2 (E.D. Pa. Mar, 31, 2009); see also Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (noting that this heavy burden applies when a party seeks to seal "*any part of* a judicial record") (emphasis added). In order to carry this heavy burden in the Eleventh Circuit, the party seeking a seal, even in civil cases, must show "it is necessitated by a compelling governmental interest, and is narrowly tailored to that interest."' Wilson v. Am. Motors Corp., 759 F.2d 1568, 1571 (11th Cir. 1985) (holding that the trial court abused its discretion in indiscriminately sealing a civil record). Accordingly, even "[w]hen a court determines that interests favoring non-disclosure justify restricting the public's access, it must restrict access in a way that will minimize the burden on the public's right, for example by sealing or redacting only those records or portions thereof that contain sensitive information." Curry v. McNeil, 2009 WL 395247 (N.D. Fla. Feb. 17, 2009). The Leor Plaintiffs simply request that these proceedings remain open until Aguiar follows the foregoing process and the Court has a meaningful opportunity to consider what *specific portions* of these proceedings (if any) should be sealed.

A review of the current transcripts in dispute confirms that they consist, almost exclusively, of information obtained from public sources, general legal arguments, and other non-confidential subject matter. Accordingly, Aguiar's indiscriminate request for a seal of the January 20 and February 10 transcripts (and any others that refer to Aguiar's alleged mental state) is improper. He has had several opportunities to identify specific portions of these

---

[1] The relief requested by the Leor Plaintiffs currently relates only to hearings and transcripts. The Leor Plaintiffs have not yet challenged the seal of Aguiar's medical records.

transcripts that he believes warrant special protection, including in his opposition brief, but has repeatedly failed to do so. Thus, Aguiar has failed to carry his heavy burden of justifying a seal, and all proceedings in this matter should remain open to the public unless and until Aguiar can carry his heavy burden of establishing specific portions of those proceedings that actually warrant a seal.

I.   THE LEOR PLAINTIFFS HAVE A DIRECT INTEREST IN WHETHER THESE PROCEEDINGS ARE SEALED.

Contrary to Aguiar's arguments, the Leor Plaintiffs have a direct interest in whether these proceedings are sealed. Not only has the administration of these cases become very cumbersome due to Aguiar's desire for secrecy, an indiscriminate seal seriously jeopardizes the integrity of these proceedings. Courts have recognized that "the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud." Hausfeld v. Cohen Milstein Sellers & Toll, PLLC, 2009 WL 3335930, *1 (E.D. Pa. Oct. 14, 2009). Moreover, the essential protections provided by public access are of particular importance in cases where, as here, a party attempts to avoid liability based upon an alleged mental condition, because public access dissuades misuse of mental health defenses and provides the public with an opportunity to scrutinize "whether [the] mental health claims were bogus or bona fide."[2] See U.S. v. Bradley, 2007 WL 1703232, at *4 (S.D. Ga. Jun. 11, 2007).

---

[2] The Bradley case highlights the public's serious concern over the potential for misuse of mental health defenses by high net worth defendants who have the means to finance a top-tier legal defense. Rather than respond to the merits of this concern, Aguiar attempts to distinguish himself from Bradley by arguing that "it is the Moving Parties – not Aguiar – who have virtually unlimited resources…." (Aguiar Br., p. 5 n.3). This argument is absurd. Aguiar received in excess of $200,000,000.00 as a result of the oil and gas venture, and it is obvious that he has utilized those funds to retain a team of high-powered attorneys. One of those attorneys previously represented to this Court that "expense is not an issue, as Your Honor knows … No one can say that expense is any kind of issue in this case…." (9/8/10 Hr'g Tr., at 41). This is yet

The striking inconsistencies between Aguiar's recent public conduct and the very different positions he has taken in the proceedings he wants sealed illustrate the critical importance of these concerns. As set forth in the Leor Plaintiff's opening brief, Aguiar continues to present himself in public as a successful and highly-capable entrepreneur. Aguiar does not deny that, upon his release from the Israeli hospital, he told the Israeli press that, "[i]n the next six months, I am going to have a lot of fun. I am in the driver's seat. I'm the one with the cash." (See D.E. 300, at p. 3). Nor does Aguiar deny that he publicly confirmed his intent to remain "involved with the Israeli soccer club," "hold business meetings and meet with his lawyers," and "look into getting involved financially with some American sports teams." (See id.). Instead, at the same time Aguiar is contemplating and executing new ventures outside the courtroom, he is portrayed in the privacy of these proceedings as an incompetent individual who suffers from such severe mental problems that he supposedly lacks the basic ability to form bad faith. This is the exact type of shady contradiction the "bright light" of public access seeks to protect against. See Hausfeld, 2009 WL 3335930, *1. The Leor Plaintiffs unquestionably have a direct interest in protecting the integrity of these proceedings, and that integrity is undermined by allowing Aguiar to indiscriminately exempt these proceedings from public scrutiny.

## II.     CONTRARY TO AGUIAR'S ASSERTIONS, THIS COURT HAS THE POWER TO CONSIDER ITS OWN SEALING PROCEDURES.

Notwithstanding the foregoing, Aguiar improperly asserts that the Leor Plaintiffs lack standing to contest a seal of these proceedings. (Aguiar Br., p. 2-3). As purported authority, Aguiar cites a string of standing cases that address the scope of federal courts' subject matter jurisdiction under Article III of the United States Constitution. See, e.g., In re Cummings, 381

---

another example of Aguiar playing fast and loose with his positions as this Court's sanctions ruling draws near.

B.R. 810, 830 (S.D. Fla. 2007) ("Article III of the United States Constitution limits federal courts' subject matter jurisdiction to 'cases or controversies.'") (citation omitted). Contrary to Aguiar's arguments, this Court clearly has Article III jurisdiction over these consolidated cases which inherently includes "supervisory power over its own records and files." Gambale v. Deutsche Bank AG, 377 F.3d 133 (2d Cir. 2004). Among the Court's supervisory powers is the authority to review the propriety of a seal, even in the absence of a motion by the parties. See Preis v. Lexington Ins. Co., 2007 WL 2493676, *1 n.3 (S.D. Ala. Aug. 30, 2007) ("[T]he Court has authority to review *sua sponte* the propriety of a filing under seal."). Aguiar completely failed to address these aspects of the Court's power in his opposition brief, and none of the cases Aguiar cites contain contrary holdings.[3]

"A judge is 'the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal any part of the record." Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1263-64 (M.D. Ala. 2003) (citation omitted). Consistent with this responsibility, this Court accurately acknowledged at a prior hearing that "the First Amendment issue exists regardless of whether or not the Miami Herald is looking for it." (2/10/10 Hr'g Tr. at 7). Other federal courts have likewise held that the presumption of openness weighs against a seal, even in the absence of a challenge by the parties or the media. See, e.g., Bartelloni v. DeCastro, 2007 WL 2155646, at *1 n.2 (S.D. Fla. July 26, 2007) ("While most cases that discuss the sealing of court records involve third party-challenges, the fact that no such challenge exists

---

[3] For example, the primary case Aguiar relies upon for his standing argument is American Historical Ass'n v. Nat'l Archives and Records Admin., 310 F. Supp. 2d 216 (D.D.C. 2004). American Hospital did not involve a case where, as here, the Court is considering its own sealing procedures after acquiring Article III jurisdiction over the underlying case. Rather, that case involved an injunction action filed for the purpose of preventing the implementation of an Executive Order which limited release of certain presidential records. Those facts are clearly distinguishable from the circumstances of this case.

here is inconsequential because the presumption of openness does not depend upon media interest."). Accordingly, Aguiar's suggestion that standing prohibits this Court for considering its own sealing procedures is without merit.

### III. THIS COURT SHOULD ALLOW PUBLIC ACCESS TO ALL PROCEEDINGS AND TRANSCRIPTS UNLESS AGUIAR CAN ESTABLISH A COMPELLING INTEREST IN A NARROWLY TAILED SEAL.

#### 1. In order to obtain a seal, Aguiar has the burden of establishing that a compelling interest justifies sealing some small portion of the record.

One of the fundamental problems with Aguiar's opposition is that it improperly focuses on the seal of certain categories of *documents*, as opposed to the indiscriminate seal of *hearings and transcripts*. For example, Aguiar cites to numerous cases which have held that a compelling interest in reasonably limiting public view of certain medical records can exist.[4] Using these inapplicable cases as a springboard, Aguiar further argues that his private medical records in this case constitute mere "discovery records," which can be sealed upon a showing of "good cause" pursuant to Federal Rule of Civil Procedure 26(c)(1).[5]

---

[4] See, e.g., Aguiar Br., at 4-6 citing Floyd v. Waiters, 133 F.3d 786, 796 n. 22 (11th Cir. 1998) (upholding district court decision "ordering a *psychiatric report* and evaluation of [the defendant] to remain sealed"); Rossbach v. Rundle, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) (citing and quoting with approval precedent "acknowledging that it may have been appropriate for the district court to seal *psychiatric records* that though pertinent to the suit would have been 'highly embarrassing to the average person.'"); Fla. Dept. of Corrections v. Abril, 969 So. 2d 201, 205-06 (Fla. 2007) ("Indeed, Florida has a long tradition of recognizing the privacy interests of patients in confidential *medical records*.") (emphasis added) (additional citations omitted).

[5] See Aguiar Br., at 7 citing Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1310-12 ("[w]here *discovery materials* are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure.") (emphasis added). Although not disclosed in Aguiar's opposition brief, Chicago Tribune further "distinguish[ed] between material filed with discovery motions and material filed in connection with more substantive motions." Id. at 1312. With respect to more substantive motions, the Court held that "material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right." Id. In this case, the Leor Plaintiffs' Motion for Sanctions and

Aguiar's medical record arguments are purely academic, as he has failed to identify a single portion of the transcripts in dispute that supposedly disclosed any confidential information allegedly obtained from his medical records and, at this point, the Leor Plaintiffs have not objected to the sealed filing of Aguiar's medical records. As set forth above, the Leor Plaintiffs' objection relates to Aguiar's request for a seal of all hearings and transcripts that make reference to his alleged mental state, which Aguiar has refused to narrowly tailor. Accordingly, the standard Aguiar must meet is set forth in Wilson v. American Motors Corp., 759 F.2d 1568, 1571 (11th 1985), which requires Aguiar to establish "a compelling governmental interest, and is narrowly tailored to that interest."[6] Id. Although Aguiar's opposition brief include arguments relating to his medical records, he makes no attempt to establish a compelling interest (or even good cause) warranting the seal of the hearings and transcripts in dispute. Nor does Aguiar argue that the Wilson standard is inapplicable in cases where a party seeks to indiscriminately seal hearings and transcripts without identifying what specific portions (if any) of those proceedings warrant protection. Accordingly, the hearings and transcripts that refer to Aguiar's alleged mental state should remain open unless Aguiar establishes a compelling interest in narrowly sealing specific portions of them.

---

the related briefs are substantive and involve a request for case dispositive relief. Accordingly, any records filed in connection with them are subject to the common law right of access. See id.

[6] In Wilson, the Eleventh Circuit adopted the standard set forth in Newman v. Graddick, 696 F.2d 796 (5th Cir. 1983) for all civil cases. In Newman, the Court held that the trial court erred in sealing certain documents and hearings in the absence of a compelling interest, even though the trial court allowed the remainder of the record to remain open to the public. Accordingly, Aguair's suggestion that Wilson applies only in cases involving the "total closure" of a proceeding is inaccurate.

### 2. The transcripts in dispute consist, almost exclusively, of subjects that are clearly inappropriate for sealing.

Aguiar notably fails to address the actual substance of the transcripts he seeks to seal in his opposition brief. To the extent Aguiar suggests that they contain extensive disclosure of his private medical records, he is mistaken. A review of the transcripts confirms that they primarily consist of public record information and legal arguments concerning the impact (or lack of impact) that Aguiar's alleged mental condition has on the Leor Plaintiff's Motion for Sanctions. None of this information is appropriate for a seal.

For example, the January 20, 2010 hearing primarily addressed Aguiar's request for another extension to respond to the Motion for Contempt. That request for an extension was based upon Aguiar's commitment in Israel and his alleged inability to communicate with his attorneys. During that hearing, Aguiar's counsel represented to the Court that the information discussed was all "a matter of public record," and Aguiar has since failed to identify any portion of that hearing that allegedly disclosed private medical information.[7]  (1/20/10 Tr., p 9).

The February 20, 2010 hearing likewise did not contain any discussion that warrants a seal. The primary matter discussed during that hearing was Aguiar's *failure to produce* medical records as ordered by the Court. (2/10/10 Tr., p 9). The focus of the parties' arguments was on what was *missing from* the documents Aguiar provided, not the substance of any private information those documents allegedly contained.

---

[7] The Court noted the inconsistency between Aguiar's counsel's request to seal this hearing and his prior representation to the Court that the statements made during the hearing were based upon public information. In response, Aguiar's counsel suggested that it could "write a letter to the Court indicating just sentences or paragraphs that might have gone beyond what is in the public record and ask for an order at least not allowing that to be public." (1/20/10 Hr'g Tr., 26). Since that date, Aguiar's counsel has failed to identify any information discussed during that hearing that was not publicly available.

8

Although Aguiar's counsel made general reference to Aguiar lacking competence during both hearings, that information is public as well.  For example, as set forth in the Leor Plaintiffs' opening brief, Aguiar himself gave a lengthy interview to the Israeli press providing alleged details of his commitment, treatment, and diagnosis.  (See, e.g., D.E. 300, at Ex. A) ("I'm still suffering from grandiose delusions ….").  As this information is already public, "there is nothing to be gained nor is anyone to be protected by its closure." See U.S. v. Continental Airlines, Inc., 150 B.R. 334, 339 (D. Del. 1993).  It is therefore inappropriate for a seal.  In re Food Mgmt. Group, LLC, 359 B.R. 543, 565 (S.D.N.Y. 2007) ("The Court lacks the authority to seal information derived from public documents."); see also Wilson, 759 F.2d at 1571 (holding that, even when the parties agree, the Court cannot "seal what were public records").

## IV.  AGUIAR HAS WAIVED HIS RIGHT TO PROHIBIT PUBLIC ACCESS BY INTENTIONALLY INJECTING HIS ALLEGED MENTAL STATE INTO THESE SANCTIONS PROCEEDINGS.

Aguiar, himself, intentionally injected his alleged mental state into this case in a last ditch effort to avoid being held accountable for illegally hacking into Tom Kaplan's email account.  In fact, it appears that Aguiar's mental state is now his principal defense to the Motion for Sanctions.  Aguiar cannot, on the one hand, seek to avoid responsibility for his criminal actions based upon an alleged mental condition, and then, on the other hand, attempt to keep information about his alleged condition confidential and exempt from public scrutiny.

Unlike the public's right to access, "a [p]laintiff's privacy right in his medical records is neither fundamental nor absolute." Barnes v. Glennon, 2006 WL 2811821, at *3 (N.D.N.Y. Sept 28, 2006).  Having chosen to inject his mental state into these proceedings, Aguiar has waived his right to contest the right of public access and keep these proceedings secret.  See, e.g., Montin v. Gibson, 2009 WL 2486441, at *2 (D. Neb. Aug. 12, 2009) ("Plaintiff put his mental

9

condition at issue when he claimed that it exempted him from the statute of limitations" and, therefore, "waived his privacy rights with regard to his mental condition"); see also Lara Urbina v. Carson, 2007 WL 2814652, *15 (E.D. Cal. Sept. 25, 2007) ("It is Plaintiff who voluntarily put his medical condition in issue. By doing so, Plaintiff has relinquished his expectation of privacy and has waived his right to confidentiality as to all his medical records, including those specifically at issue."). Other courts have recognized that, by placing otherwise protected information in dispute, a party can waive its right to seal private information. See Cabble v. Rollieson, 2006 WL 464078, at *8 (S.D.N.Y. 2006) (noting that a party otherwise entitled to the "sealing of records can waive that protection by commencing a civil action and placing protected information into issue") (citations omitted).

Aguiar attempts to avoid this result by suggesting that this waiver was not "knowing and voluntarily," because it occurred during his commitment in Israel. (Aguiar's Br., at 9-10). This argument misses the mark. It was not Aguiar's statements to the press that resulted in the waiver, it was the many mental state arguments he asserted in this Court through counsel both before and after his commitment occurred. Accordingly, if Aguiar has any remaining interest in a seal, it would have to be so compelling that it not only overcomes the public's right of access on a very narrowly tailored basis, but it would also have to overcome the waiver resulting from Aguiar's strategic decision to interject his purported mental state into this case.

V.  **CONCLUSION**

Based on the foregoing, the Court should allow public access to the hearing transcripts from January 20 and February 10, 2010 and all future proceedings and transcripts unless Aguiar can carry his heavy burden of establishing, beyond mere embarrassment, a compelling interest in reasonably limiting that access on a narrowly tailored basis with respect to specific portions of

these proceedings. In the event Aguiar requests an opportunity to attempt to establish a compelling interest in sealing certain portions of these proceedings, the Leor Plaintiffs request an opportunity to respond prior to determination of Aguiar's request.

Respectfully submitted this 17th day of March 2010.

s/ Brian J. Stack
Brian J. Stack, Esq. (Fla. Bar No. 0476234)
bstack@stackfernandez.com
**STACK FERNANDEZ ANDERSON & HARRIS, P.A.**
1200 Brickell Avenue, Suite 950
Miami, Florida 33131
Tel. (305) 371-0001
Fax. (305) 371-0002

*Attorneys for William Natbony*

s/ Harley Shepard Tropin
Harley S. Tropin, Esq. (Fla. Bar No. 241253)
hst@kttlaw.com
Thomas A. Tucker Ronzetti, Esq. (Fla. Bar No. 965723)
tr@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON, P.A.**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel. (305) 372-1800
Fax. (305) 372-3508

*Attorneys for Leor Exploration & Production LLC, Pardus Petroleum L.P., Pardus Petroleum LLC, and William Natbony*

s/ Stephen M. Rathkopf
Stephen M. Rathkopf, Esq.
srathkopf@herrick.com
Marisa A. Leto, Esq.
mleto@herrick.com
**HERRICK, FEINSTEIN LLP**
2 Park Avenue
New York, NY 10016
Tel. (212) 592-1415
Fax. (212) 545-3444

*Attorneys for Thomas Kaplan and William Natbony*

s/ David Ira Spector
David I. Spector (Fla. Bar No. 86540)
david.spector@akerman.com
Venus A. Caruso (Fla. Bar No. 790001)
venus.caruso@akerman.com
Scott W. Atherton (Fla. Bar No. 749591)
scott.atherton@akerman.com
**AKERMAN SENTERFITT**

s/ Jonathan B. Rubenstein
Jonathan B. Rubenstein, Esq.
**BAKER BOTTS L.L.P.**
jonathan.rubenstein@bakerbotts.com
2001 Ross Avenue
Dallas, Texas 75201
Tel. (214) 953-6594
Fax. (214) 661-4594

*Attorneys for Leor Exploration & Production LLC, Pardus Petroleum L.P., Pardus Petroleum LLC, and William Natbony*

11

222 Lakeview Avenue - Suite 400 Esperante
West Palm Beach, FL  33401
Tel:  (561) 653-5000
Fax: (561) 659-6313

*Attorneys fo*r *Katten Muchin Rosenman LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                s/ David Ira Spector
                David I. Spector (Fla. Bar No. 86540)

**SERVICE LIST**

*Leor Exploration & Production LLC, et al. v. Aguiar*,
Case No. 09-60163-CIV-SEITZ/O'SULLIVAN
United States District Court, Southern District of Florida
*Aguiar v. Natbony, et al.*,
Case No. 09-60683-CIV-SEITZ/O'SULLIVAN
United States District Court, Southern District of Florida

| | |
|---|---|
| Glenn E. Goldstein, Esq.<br>goldsteing@gtlaw.com<br>Jerold Ira Budney, Esq.<br>BudneyJ@gtlaw.com<br>**Greenberg Traurig**<br>401 E. Las Olas Boulevard<br>Suite 2000<br>Fort Lauderdale, FL  33301<br>(via CM/ECF) | Harley Shepard Tropin, Esq.<br>hst@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>TR@kttlaw.com<br>**Kozyak Tropin & Throckmorton**<br>2525 Ponce de Leon Boulevard, 9th Floor<br>Coral Gables, FL  33134<br>(via CM/ECF) |
| Gregory J. Miarecki, Esq.<br>gmiareck@winston.com<br>Thomas J. Wiegand, Esq.<br>twiegand@winston.com<br>**Winston & Strawn**<br>35 W. Wacker Drive<br>Chicago, IL  60601-9703<br>(via CM/ECF) | Marisa A. Leto, Esq.<br>mleto@herrick.com<br>Stephen M. Rathkopf, Esq.<br>srathkopf@herrick.com<br>**Herrick Feinstein**<br>2 Park Avenue<br>New York, NY  10016<br>(via CM/ECF) |
| David Ira Spector, Esq.<br>david.spector@akerman.com<br>Venus Afroditi Caruso, Esq.<br>venus.caruso@akerman.com,<br>**Akerman Senterfitt**<br>222 Lakeview Avenue<br>Suite 400 Esperante<br>West Palm Beach, FL  33401<br>(via CM/ECF) | Jonathan B. Rubenstein, Esq.<br>jonathan.rubenstein@bakerbotts.com<br>**Baker Botts L.L.P.**<br>2001 Ross Avenue<br>Dallas, Texas  75201<br>(214) 953-6594--Direct Dial<br>(214) 661-4594--Fax<br>(via CM/ECF) |
| Brian J. Stack, Esq.<br>bstack@stackfernandez.com<br>**Stack Fernandez Anderson & Harris, P.A.**<br>1200 Brickell Avenue<br>Suite 950<br>Miami, Florida 33131<br>Tel: 305-371-0001<br>Fax:  305-371-0002<br>(via CM/ECF) | Alan M. Dershowitz, Esq.<br>26 Reservoir Street<br>Cambridge, Massachusetts  02138<br>dersh@law.harvard.edu<br>(via CM/ECF) |

| | |
|---|---|
| Kendall Coffey, Esq.<br>**Coffey Burlington**<br>2699 South Bayshore Drive<br>Miami, Florida  33133<br>Tel:  305-858-2900<br>Fax:  305-858-5261<br>(via CM/ECF) | |